DUANE W. LARSON AND PAMELA A. LARSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Larson v. Commissioner
Docket No. 44303-85
United States Tax Court
T.C. Memo 1994-302; 1994 Tax Ct. Memo LEXIS 305; 67 T.C.M. (CCH) 3154; June 29, 1994, Filed *305 Decision will be entered for respondent. Duane W. Larson, pro se. For respondent: Jay M. Erickson. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in a joint notice of deficiency dated September 16, 1985, [1] determined income tax deficiencies and additions to tax for petitioners' 1978, 1979, and 1980 taxable years as follows: Year
Deficiency
Sec. 6653(b) 1978
$ 36,100.93
$ 18,050.47
1979
160,694.87
80,347.44
1980
127,094.08
63,547.04
The controversy between the parties raises the following issues for our consideration: (1) Whether respondent's notice of deficiency is arbitrary or capricious; (2) whether respondent's use of the net worth method to reconstruct petitioners' income was warranted and appropriate; (3) whether petitioners understated their income for 1978, 1979, and 1980 and whether those understatements were due to fraud under section 6653(b); [2] (4) alternatively, if petitioners are not liable for an addition to tax for fraud, whether they are liable for a negligence addition to tax under section 6653(a); (5) whether the period for assessment for the years 1978, 1979, and 1980 had expired at *306 the time the notice of deficiency was issued; and (6) whether petitioners are entitled to use income averaging in computing the tax for 1978, 1979, and 1980. FINDINGS OF FACT [3]
Respondent mailed a notice of deficiency to petitioners at their *307 last known address on September 16, 1985. When the petition in this case was timely filed, petitioners resided in Mankato, Minnesota. Petitioners, who were married in 1974, were married throughout the years under consideration. Petitioner Pamela A. Larson (Mrs. Larson) is a registered nurse and was so employed from 1975 to 1979. Petitioner Duane W. Larson (Mr. Larson) was a credit administrator for an engineering company from October 6, 1975, to September 9, 1977. Subsequent to that time, Mr. Larson, on the 1978, 1979, and 1980 income tax returns, was not shown as having a profession, job, or income-earning position or activity other than farming, and losses were reported for that activity. Mr. Larson, in 1974, earned a degree in chemistry and had completed most of the requirements necessary for a master's degree in business administration. Mr. Larson completed eight graduate-level courses in accounting, management, business law, and finance. Petitioners did not file Federal income tax returns for any of the taxable years 1966 through 1973. For the taxable years 1974 through 1983, Mr. Larson reported the following amounts of taxable income or (loss), along with the nature *308 of the income in some instances: Taxable Income
Adjusted Gross
Unexplained
Year
or (Loss) Income or (Loss)
Wages Income n11974 $ (7,118.45)
$ (7,118.45)
-0-
-- 1975
3,723.90 3,723.90 $ 4,670
-- 1976
17,502.24 17,502.00 18,531
-- 1977
19,784.00 20,794.00 22,611
-- 1978
n2 (2,963.00)
(3,022.00)
n3 8,177
-- 1979
n2 (80,261.00)
(80,286.00)
n3 338
-- 1980
404.00 404.00 n3 2,400
-- 1981
135,522.24 179,869.82 20,000
$ 155,000
1982
65,235.39 122,110.89 18,435
104,000
1983
148,300.00 214,095.00 17,200
200,000
1 Filed by Duane W. Larson individually.
2 These taxable losses were reportedly attributable to
farming losses.
3 Subsequent to 1977, wages reflected were attributable to
Mrs. Larson.
Mr. Larson, at trial, refused to reveal the source of the $ 155,000, $ 104,000, and $ 200,000 amounts of unidentified income reported on the 1981, 1982, and 1983 income tax returns, respectively. The 1981, 1982, and 1983 income tax returns were filed after a criminal investigator for the Internal Revenue Service notified Mr. Larson that he was under investigation. Mr. Larson also refused to answer questions *309 about his cash on hand at any particular time and about whether cash was kept in any of petitioners' various safety deposit boxes. During the early 1970s, Mr. Larson consulted with Attorney James Hulwi (Mr. Hulwi) concerning an alleged marijuana violation. Respondent's agents were aware that various drug enforcement agencies possessed information reflecting that Mr. Larson was involved in drug trafficking throughout the 1970s. Mr. Hulwi, who did not specialize in tax matters, advised Mr. Larson that he was required to pay Federal income tax on illegally obtained income. During May 1981, Internal Revenue Service Special Agent Perry Stow received information that Mr. Larson was a narcotics trafficker, and a criminal investigation was commenced for the 1978, 1979, and 1980 taxable years. Mr. Larson was advised that he was under investigation on August 11, 1981. Special Agent Stow issued summonses to third-party record-holders, including banks, and Mr. Larson and/or his representative was notified of the summonses. Mr. Larson intervened in the summons proceedings and, ultimately, Special Agent Stow recommended that the investigation proceed by means of a grand jury. Petitioners *310 did not provide books and records to respondent concerning the 1978, 1979, or 1980 income tax returns. After information was gathered, petitioners' income was reconstructed by means of the net worth method, along with currency expenditures. The net worth accumulation for 1969 through 1977 was determined to be negative due to borrowing and accumulated debts during that period. Special Agent Stow concluded that petitioners should have a nominal opening cash balance even though he was aware that Mr. Larson had been involved in drug trafficking prior to 1977-78, that petitioners had relatively large amounts of expenditures during 1977 relative to prior years, and that they possessed safety deposit boxes prior to 1978. Petitioners did not provide Special Agent Stow with any information concerning a cash hoard, or income from any unreported or nontaxable source for any period prior to, during, or after 1978. Special Agent Stow determined that Mr. Larson and others "under his control" exchanged over $ 600,000 in currency using more than 300 negotiable monetary instruments (such as money orders) during 1978 through 1980. The cash was converted into various negotiable instruments in *311 amounts less than $ 10,000 and obtained from a variety of financial institutions. Petitioners used these instruments to purchase realty, gold, silver, jewelry, numerous automobiles, an airplane, and two boats; to remodel their home; and to make loans and/or gifts to family members during those same years. Mr. Larson also opened foreign bank accounts in Switzerland and the Grand Cayman Islands. During 1980, petitioners used nominees to hold real property for their benefit. Special Agent Stow used the net worth method to reconstruct petitioners' income because of a lack of books and records, large numbers of untraceable cash transactions by petitioners during the period, evidence of numerous asset acquisitions during the period under investigation, and petitioners' lavish lifestyle and relatively small amount of reported income on their returns. Special Agent Stow used a nominal cash-on-hand opening position for petitioners' net worth as of January 1, 1978, based upon specific evidence of borrowing that, from the agent's point of view, would not have been necessary if petitioners had a large cash hoard. In particular, the following items were relied upon by Special Agent Stow: *312 (1) Petitioners made only limited payments on a student loan principal balance until July 28, 1978; (2) $ 1,500 was borrowed May 15, 1975, and remained unrepaid at the time of a September 1977 refinancing; (3) an automobile and camper were purchased in May 1977 with a small downpayment under an installment contract; (4) $ 3,500 was borrowed during 1977 to make a downpayment on a home that was financed; (5) checking accounts with loan features for overdraft situations were availed of on numerous occasions during 1977 and 1978; (6) $ 700 was borrowed on February 9, 1978, to purchase an automobile; (7) a rental home was purchased for $ 27,000 on March 1, 1978, and $ 21,600 was financed; (8) as of June 1, 1973, Mr. Larson reflected that his cash position was $ 1,200 for purposes of a student loan application; (9) Mr. Larson's 1974 Federal income tax return reflected no wage income and reflected borrowing to engage in investments which netted losses exceeding $ 7,000; (10) Mrs. Larson's work experience did not provide a source for a cash accumulation during the period under consideration; (11) gift tax returns had not been filed by Mr. Larson's parents; and (12) Mr. Larson's father had *313 loaned money to him and it was repaid. Special Agent Stow's analysis reflected that petitioners' net worth for all years 1969 through 1977 was increasingly negative. During 1985, Mr. Larson was charged under section 7201 with evading his 1978, 1979, and 1980 income tax. Pursuant to a 1985 plea agreement, Mr. Larson pled guilty to evading his 1979 income tax. The plea agreement was accepted, and Mr. Larson was found guilty of tax evasion and sentenced to 5 years in prison. As part of the plea agreement, Mr. Larson conceded the accuracy of the criminal tax computations for 1978, 1979, and 1980, which reflected understatements of income tax in the amounts of $ 34,487.23, $ 158,839.97, and $ 125,168.18, respectively. On August 19, 1985, at a hearing on Mr. Larson's plea agreement, while under oath, he conceded that the above-referenced understatements represented, at minimum, accurate amounts of tax that he owed and which had not been reported or paid. Also as a part of the plea agreement, Mr. Larson was not required to admit that the income tax which he did not report or pay was from illegal narcotic trafficking, and he reserved the right to present tax information to respondent *314 which could modify the amount of tax liability. In the notice of deficiency, respondent reflected $ 40,043.59 as petitioners' opening net worth as of December 31, 1977. The $ 40,043.59 was composed of $ 5,000 in furniture and personal property; $ 27,786 for a farmhouse, land, and improvements; $ 2,275 for a 1973 Oldsmobile; $ 1,895 for a Ford station wagon; $ 550 for a 1965 Ford Mustang; $ 1,481 for a tent camper; $ 556.59 cumulatively in six different bank accounts; and $ 500 cash on hand, derived from the fact that a $ 500 bank deposit was made on January 6, 1978. By means of documentary evidence, Special Agent Stow determined that petitioners had acquired assets and made other expenditures during 1978, 1979, and 1980 resulting in total assets for those years in the amounts of $ 186,802.48, $ 289,004.98, and $ 449,189.25. After arriving at total assets for each taxable year, those amounts were reduced by the prior year's ending net worth, resulting in annual net worth increases. Those amounts were further increased by specifically detailed expenditures for petitioners during 1978, 1979, and 1980 in the amounts of $ 3,621.37, $ 214,736.97, and $ 108,001.07, respectively, and *315 reduced for nontaxable items in the amounts of $ 4,970.50, $ 3,993, and $ 1, respectively. The net result of these computations, after reductions for standard or itemized deductions and personal exemptions, was corrected taxable income of $ 127,296.33, $ 339,323.92, and $ 270,980.36 for 1978, 1979, and 1980, respectively, and corrected tax liabilities of $ 34,487.23, $ 158,839.97, and $ 125,168.18 for those same years, respectively. Petitioners had reported no tax liabilities for 1978 and 1979, and $ 172 in tax liability for 1980. Therefore, respondent determined that the entire amount of the corrected tax liabilities for 1978 and 1979 represented deficiencies and that the corrected tax liability for 1980, less $ 172, resulted in the deficiency in income tax for 1980. On May 2, 1984, Mr. Larson was found guilty "of knowingly and intentionally possessing with intent to distribute approximately three pounds of cocaine" and sentenced to 10 years' imprisonment and a $ 25,000 fine. OPINION Petitioners raise several procedural issues that are common in cases involving respondent's reconstruction of income where the reconstructed income may be from an illegal source. In addition, *316 petitioners have questioned respondent's reconstruction methodology, focusing on whether respondent erroneously failed to allow a larger cash position in the opening net worth. Finally, we will consider whether respondent has shown by clear and convincing evidence that petitioners' returns were fraudulent. A. Petitioners' Contention That Respondent's Notice of Deficiency Is Arbitrary or Capricious -- Generally, a taxpayer bears the burden of proving that the Commissioner's determination in the notice of deficiency is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). It is also well settled that Commissioner's determination is ordinarily afforded a presumption of correctness and the burden of going forward with the evidence rests with the taxpayer. Rule 142(a); Welch v. Helvering, supra; Dellacroce v. Commissioner, 83 T.C. 269, 279-280 (1984). In this case, petitioners argue that respondent should not be allowed to rely upon the presumption of correctness usually afforded the determination because respondent has failed to show that petitioners earned income and/or *317 that the source of the income was from illegal activity. We normally do not look behind the notice of deficiency to examine the basis for the Commissioner's determination or the propriety of the motives or administrative policies or procedures used in making the determinations reflected in the notice. Jackson v. Commissioner, 73 T.C. 394, 400 (1979); see also Crowther v. Commissioner, 269 F.2d 292, 293 (9th Cir. 1959), affg. on this issue 28 T.C. 1293, 1301 (1957); Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989). We have recognized that "the Commissioner's determination may often rest upon hearsay or other inadmissible evidence, and we know of no rule of law calling for a review of the materials that were before the Commissioner in order to ascertain whether he relied upon improper evidence". Rosano v. Commissioner, 46 T.C. 681, 687 (1966). The rationale for this rule is that a trial before this Court is a proceeding de novo; our determination of a taxpayer's tax liability must be based on the merits of the case and not on *318 any previous record developed at the administrative level. Jackson v. Commissioner, supra; Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328 (1974). A limited exception to the general rule has been recognized in cases involving unreported illegal income where the Commissioner fails to introduce any substantive evidence, but rests on the presumption of correctness afforded the notice, and the taxpayer challenges the notice of deficiency on the grounds that it was arbitrary (i.e., without rational foundation in fact and based upon unsupported assumptions) and excessive within the rule of Helvering v. Taylor, 293 U.S. 507 (1935). Day v. Commissioner, 975 F.2d 534 (8th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-140; Jackson v. Commissioner, supra 12 at 401; Human Engineering Inst. v. Commissioner, 61 T.C. 61, 66 (1973); see also Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), affg. in part, revg. in part *319 and remanding 74 T.C. 260 (1980); Petzoldt v. Commissioner, supra; Dellacroce v. Commissioner, supra. A showing that the deficiency notice is arbitrary and excessive and, therefore, not entitled to the usual presumption of correctness shifts the burden of going forward with the evidence to the Commissioner. Llorente v. Commissioner, 74 T.C. at 264; Jackson v. Commissioner, supra at 401; Greenberg's Express, Inc. v. Commissioner, supra.Such a showing, however, does not shift the burden of proof -- it remains with the taxpayer. Welch v. Helvering, supra; Dellacroce v. Commissioner, supra at 287; Jackson v. Commissioner, supra; accord United States v. Rexach, 482 F.2d 10, 16 (1st Cir. 1973). The line of cases relied upon by petitioners to make the requisite showing generally concerns situations where a taxpayer was considered to be in the business of *320 buying and/or selling illegal substances based upon limited evidence (an occasion where the taxpayer was found with cash and/or drugs). Illegal income is then projected for an annualized accounting period. In those cases, the Commissioner is required to present substantive evidence linking the taxpayer to the illegal income-producing activity. This case is different for two major reasons. First, respondent has shown that petitioners had substantial amounts of unexplained increases in wealth that have not been shown to be from nontaxable sources. Second, Mr. Larson has admitted involvement in drug activity for years prior to the first taxable year in issue. Petitioners focus upon Mr. Larson's pre-1978 drug activity to show an accumulation of wealth to support their cash hoard approach or defense to respondent's net worth recomputation. Mr. Larson further contends that he stopped dealing in drugs just before the years before the Court. We find Mr. Larson's argument and his underlying self-serving testimony to be unbelievable. The evidence in this case reflects continuing increases in wealth, even though petitioners have reported no additional sources of income during the taxable *321 years in question. The admitted drug dealing prior to the years in question supports a finding that the likely source of Mr. Larson's income during the subject years was from illegal drug activity. This finding is bolstered by Mr. Larson's drug conviction subsequent to the years in question and the large amounts of unexplained acquisitions of assets proven by respondent in this case. Even if respondent were unable to show that the source of Mr. Larson's income was drug dealing or other illegal activity, such a showing is unnecessary here. It is unnecessary because respondent specifically documented unexplained increases in wealth, and petitioners have not shown or argued that they are from a nontaxable source. See Erickson v. Commissioner, 937 F.2d 1548 (10th Cir. 1991), affg. T.C. Memo. 1989-552; Delaney v. Commissioner, 743 F.2d 670 (9th Cir. 1984), affg. T.C. Memo. 1982-666; Schad v. Commissioner, 87 T.C. 609 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); Tokarski v. Commissioner, 87 T.C. 74, 76-77 (1986) *322 (the taxpayer conceded receipt of the purported illegal income, and the Commissioner was not required to produce evidence linking the taxpayer to the income-producing activity). Mr. Larson also contends that his assertion of the Fifth Amendment privilege against self-incrimination at the trial of this case should not result in a negative inference against him. In the setting of this civil case, we consider the evidence in order to decide whether respondent has shown fraud by clear and convincing evidence, and the remaining issues are decided on the basis of a preponderance of the evidence. The prevailing rule is that "'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'" Meier v. Commissioner, 91 T.C. 273, 290 (1988) (quoting Hughes Tool Co. v. Meir, 489 F. Supp. 354, 374 (D. Utah 1977)); Baxter v. Palmigiano, 425 U.S. 308 (1976). A valid assertion of the privilege against self-incrimination, however, is not a "substitute for evidence that would assist in meeting a *323 burden of production," for to adopt such a view "would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." * * *
Petzoldt v. Commissioner, supra at 684-685 (quoting United States v. Rylander, 460 U.S. 752, 758 (1983)), and cases cited thereat. In reaching our conclusion that the notice is not arbitrary or capricious, we do not draw any inferences from Mr. Larson's failure to respond. However, regarding issues upon which petitioners have the burden of proof or the burden of going forward with the evidence, we continue to require that their burden be carried. In other words, petitioners' failure to respond could result in a failure to carry their burden. B. Respondent's Use of the Net Worth Method To Reconstruct Petitioners' Income -- Taxpayers have the duty to maintain adequate records to enable them to file tax returns. Sec. 6001. Where, as here, a taxpayer has not kept or produced any records, section *324 446(b) authorizes the Commissioner to compute income in accordance with a method which clearly reflects income. It is proper to employ an indirect method to calculate income where the method used is reasonable. Holland v. United States, 348 U.S. 121 (1954); Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). [4] The reconstruction need only be reasonable in light of all surrounding facts and circumstances. Giddio v. Commissioner, Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). The Commissioner is given some latitude in determining which method of reconstruction to apply where the taxpayer has neither filed a return nor maintained any records. Petzoldt v. Commissioner, 92 T.C. at 693. Where a taxpayer fails to maintain records, courts have approved the Commissioner's reasonable reconstruction of a taxpayer's gross receipts and costs to determine taxable income. Jones v. Commissioner, 903 F.2d 1301, 1303 (10th Cir. 1990), affg. in part on this issue, revg. in part and remanding T.C. Memo. 1988-373; *325 see Anson v. Commissioner, 328 F.2d 703, 705-706 (10th Cir. 1964), affg. in part and modifying in part Bassett v. Commissioner, T.C. Memo. 1963-10. In the instant case, petitioners did not provide any books, records, or other credible evidence establishing that increases in wealth resulted from illegitimate or legitimate businesses or nontaxable sources. Nor did petitioners provide any assistance to respondent in determining their taxable income. Additionally, petitioners have not provided alternative or more appropriate methods of reconstruction to the one utilized by respondent. Respondent reconstructed petitioners' income by means of the net worth method and supplemented it by means of specific cash expenditures. We find respondent's *326 use of the net worth and cash expenditure methods to be warranted and reasonable. To use the net worth method, respondent must establish an opening net worth position with reasonable certainty, establish an ending net worth, and establish that the net worth increases are attributable to currently taxable income. Holland v. United States, supra. By using the net worth and expenditures methods, respondent has shown substantial asset acquisitions and cash expenditures which support a finding that petitioners failed to report all of their income for the taxable years 1978, 1979, and 1980. Mr. Larson contends, however, that respondent failed to give consideration to his extensive drug dealing in years prior to 1978 and that it is likely that petitioners would have accumulated wealth prior to the years in question from which the assets could have been purchased. Petitioners make this argument in a hypothetical fashion because they provide no specifics as to the amounts or timing of these alleged accumulations of wealth. On brief, petitioners do not complain that respondent should not be allowed to reconstruct their income and, additionally, petitioners *327 have stipulated documents supporting the increases in the net worth computation. Petitioners do argue that respondent's starting position is flawed and, as a result, the reconstruction is arbitrary. The flaw, according to petitioners, is that respondent failed to either rebut the existence of a cash hoard or to correctly determine the amount of petitioners' cash hoard. In their opening brief, petitioners state: "it is virtually undisputed that [Mr. Larson] was heavily involved in narcotics trafficking from 1966-1977, with indications of narcotics dealing going back as far as 1966." Petitioners also point to the fact that they rented several safe deposit boxes prior to 1978. This fact, petitioners surmise, should support a claim that a cash hoard existed prior to 1978. Petitioners go on to contend that these factors were ignored by respondent in formulating petitioners' opening cash position. Petitioners also argue that those factors must be rebutted or respondent's reconstruction is without merit. Respondent was confronted with potentially conflicting information while reconstructing petitioners' income. Respondent had ample evidence that, through 1977, petitioners borrowed *328 extensively so that the cost or value of their known assets was always less than their outstanding obligations. Respondent contends that the nominal cash allowance in the opening net worth is supported by the borrowing and the outstanding loan balances exceeding the cost of assets known to respondent. Respondent's agents, however, were also aware (through information from other government entities) of Mr. Larson's drug trafficking history in years prior to 1978 and that petitioners dealt extensively in cash. These factors could lead to the appearance of a contradiction because it could be unreasonable to believe that Mr. Larson began dealing in drugs on January 1, 1978, or that the accumulation of wealth began January 1, 1978, even though Mr. Larson had been involved in dealing for several years. At the time of the investigation (1981), however, respondent was not able to determine the amounts of cash, if any, that petitioners may have stored in safe deposit boxes as of December 31, 1977, or the amount of cash generated by drug trafficking prior to 1978. The approved standards for reconstruction of income would not permit respondent to guess the amount of cash petitioners might *329 have accumulated. At the time of the investigation, Mr. Larson did not cooperate and/or provide evidence or make allegations about the amount of cash on hand. Further, petitioners have not alleged any specific amounts or instances of a cash hoard which respondent could specifically verify or disprove, as the case may be. Petitioners' cash hoard argument, at best, is a theoretical possibility and not verifiable in the form made. The Holland standards require that the Commissioner establish, with reasonable certainty, an opening net worth, and that he either have conducted a reasonable investigation of leads negating possible sources of nontaxable income or have established a likely source of unreported taxable income. [Citation omitted; emphasis added.]
Smith v. Commissioner, 91 T.C. 1049, 1059 (1988). The Commissioner is not required to negate all possible nontaxable sources of the increase in net worth, and proof of a likely source is sufficient. Holland v. United States, 348 U.S. 121 (1954); Barbuto v. Commissioner, T.C. Memo. 1991-342. Where the Commissioner has *330 determined opening net worth with reasonable certainty, taxpayers have been held to bear the burden of showing the determination is erroneous or arbitrary. Toledano v. Commissioner, 362 F.2d 243 (5th Cir. 1966), affg. in part, revg. in part and remanding T.C. Memo. 1963-200; Moceri v. Commissioner, T.C. Memo. 1969-33; Jordan v. Commissioner, T.C. Memo. 1955-10. Respondent is not required to prove the precise income that was earned in 1978, 1979, and 1980, but only to follow established guidelines in reconstructing income and to conduct a thorough investigation. If petitioners provide leads indicating nontaxable sources, including income earned in prior years (cash hoard), respondent has an obligation to investigate those leads and determine whether the reconstruction should be adjusted. Petitioners did not provide any specific leads. Instead their contentions raise the possibility of a cash hoard. Without specifics and details, including amounts, places, and times, there is no reasonable way for respondent to investigate, verify, or rebut petitioners' assertions *331 of a cash hoard. It is well established that where the Commissioner has conducted a thorough investigation and fails to uncover a cash hoard, the burden is on the taxpayer to come forward with evidence of a cash hoard, which petitioners have failed to do. Holland v. United States, supra at 138-139; Fowler v. United States, 352 F.2d 100, 107 (8th Cir. 1965); United States v. Mackey, 345 F.2d 499, 507 (7th Cir. 1965). Likewise, this Court is not in a position to decide whether petitioners are entitled to a larger opening cash position where petitioners have failed to advance anything but speculative theories. Moreover, we find petitioners' contention that they had a cash hoard to be without substance and unbelievable. Petitioners have provided no explanation for the borrowing that occurred in pre-1978 years. They have also failed to provide any explanation why the large volume of expenditures and asset acquisitions began in 1978 if a cash hoard existed prior to that time. Mr. Larson also contends that revealing any specifics may tend to incriminate him and that this silence should *332 not be detrimental. We agree that Mr. Larson should not automatically be penalized for asserting his privileges, but, where he has a burden to come forward in a civil case, we likewise cannot reward him for that same silence. The net result, however, is that petitioners fail to carry their burden of showing that respondent's opening cash position is in error or to advance leads worthy of further development or investigation. Regarding the ending net worth, petitioners' net worth increased precipitously during the years in question. The 1978 net worth was $ 186,802.48, and it increased to $ 289,004.98 and $ 449,189.25 during 1979 and 1980, respectively. During those years, petitioners purchased several automobiles, trucks, an airplane, boats, a snowmobile, jewelry, vacations, a swimming pool, a lake home, a $ 140,000 residence (for cash), and over $ 225,000 worth of gold and silver, and made numerous expenditures for remodeling, furniture, and items for their homes. Respondent has thoroughly documented all of the increases to net worth, and petitioners have supplied no evidence that refutes the net worth analysis. We accordingly find that respondent's reconstruction correctly *333 determined petitioners' corrected taxable income as $ 127,296.33, $ 339,323.92, and $ 270,980.36 for 1978, 1979, and 1980, respectively. C. Section 6653(b) Addition to Tax -- Respondent determined that all of the underpayments of tax are due to fraud under section 6653(b)[5] for 1978, 1979, and 1980. Section 6653(b) provides that if any part of the underpayment is due to fraud, there will be an addition to tax equal to 50 percent of the entire underpayment. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Powell v. Granquist, 252 F.2d 56 (9th Cir. 1958); Miller v. Commissioner, 94 T.C. 316, 332 (1990). Respondent has the burden of proving by clear and convincing evidence that an underpayment exists for the years in issue and that some portion of the underpayment is due to fraud. Sec. 7454(a); Rule 142(b). To meet *334 this burden, respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Respondent has met the burden of proof as to the underpayment of tax for each year by means of the reconstruction of income. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), *335 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). Fraud may not be found under "circumstances which at the most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950) (fn. ref. omitted.); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra; Stephenson v. Commissioner, 79 T.C. 995 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984). The *336 taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra at 499. Courts have relied on several indicia of fraud in considering the section 6653(b) addition to tax. Although no single factor may necessarily be sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603; Beaver v. Commissioner, supra at 93. Circumstantial evidence which may give rise to a finding of fraudulent intent includes: (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; *337 (7) filing false Forms W-4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; see Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990). These "badges of fraud" are nonexclusive. Miller v. Commissioner, supra at 334. The taxpayer's background and the context of the events in question may be considered as circumstantial evidence of fraud. United States v. Murdock, 290 U.S. 389, 395 (1933); Spies v. United States, supra at 497; Plunkett v. Commissioner, supra at 303. Petitioners were both aware that their standard of living far exceeded the income reported in their income tax returns. Mr. Larson was college educated in chemistry and had completed substantial studies toward a master's degree in business. The 1981, 1982, and 1983 returns included substantial amounts of unidentified *338 income and were filed in a sequence following respondent's criminal investigation into petitioners' income tax returns for 1976 through 1980. Mr. Larson asserts that he had been engaged in drug trafficking since the early 1970s, but denies that he was so engaged subsequent to 1977, the year preceding the first year for which respondent reconstructed petitioners' income. Petitioners have asserted the accumulation of a cash hoard prior to 1978, but have provided insufficient details for respondent to check the veracity of this assertion. Additionally, petitioners engaged in substantial cash transactions and did not submit records of pre-1978 drug trafficking activity or of Mr. Larson's transactions during the years before the Court. Petitioners attempted to conceal some of their assets by using nominees. One example is the purchase of petitioners' $ 140,000 home in the name of Mr. Larson's father. Finally, the pattern of substantial understatements for 1978, 1979, and 1980 is another indicium of fraud upon which respondent has relied. We find petitioners' actions constitute a pattern of activity designed to fraudulently avoid the reporting and payment of their Federal income *339 tax for 1978, 1979, and 1980. Respondent also relies upon collateral estoppel in support of the determination that Mr. Larson's 1979 return was fraudulent. Mr. Larson was convicted of violation of section 7201 based upon his plea of guilty. It is well established that a tax evasion conviction under section 7201, whether by trial or a plea of guilty, estops the taxpayer from denying that the return for that year is fraudulent within the meaning of section 6653(b). Tomlinson v. Lefkowitz, 334 F.2d 262, 266 (5th Cir. 1964); Amos v. Commissioner, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 75 (1964). Mr. Larson argues that he was under some form of duress and that his agreement to the guilty plea should not now be used against him. We note that Mr. Larson was represented by counsel in the criminal proceeding as reflected in the transcript of the acceptance of his plea agreement by the United States District Court. The criminal judgment, transcript, and related documents do not reflect duress and are *340 regular on their face. In order to accept Mr. Larson's argument that he was under duress, we would have to find that some or all of the people involved in Mr. Larson's sentencing were forcing Mr. Larson to plead guilty. Included amongst the individuals who could be involved are Mr. Larson's attorney, the Government prosecutor, and/or the judge. Based upon Mr. Larson's self-serving testimony, we are not prepared to do that. Further, if Mr. Larson did not plead guilty of his own free will, that could constitute a fraud upon the U.S. District Court, a matter which Mr. Larson should attempt to remedy in that forum. In any event, we have otherwise found that petitioners filed fraudulent returns for the years 1978, 1979, and 1980. Based upon these indicia we find that respondent has carried the burden of showing by clear and convincing evidence that petitioners' failure to report all of their income for 1978, 1979, and 1980 was fraudulent with the intent to evade their tax. Because we have found petitioners liable for an addition to tax under section 6653(b), it is not necessary to consider respondent's alternative position that petitioners are liable for an addition to tax for negligence *341 under section 6653(a). D. The Period for Assessment for the Years 1978, 1979, and 1980 -- Petitioners alleged that the 3-year period for assessment had expired at the time the notice of deficiency was issued. Respondent contends that a deficiency may be determined and tax assessed at any time if any part of the deficiency is attributable to fraud within the meaning of section 6653(b). See sec. 6501(c)(1). Since we have found petitioners liable for additions to tax under section 6653(b) with respect to deficiencies attributable to returns for the taxable years 1978, 1979, and 1980, it follows that respondent's notice of deficiency is timely with respect to all 3 taxable years. E. Petitioners' Entitlement To Use Income Averaging in Computing the Tax for 1978, 1979, and 1980? -- If we find additional tax due for 1978, 1979, and 1980, petitioners seek to use income averaging to reduce their tax burden. Secs. 1301-1305. In order to utilize income averaging, it is necessary to determine and adjust the taxable income of the prior 4 taxable years. Petitioners bear the burden of showing the income and deductions for the 4 taxable years immediately preceding the year in which *342 income averaging is sought to be used. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The returns for the 4 years prior to 1978 are a part of the record, but respondent argues that they are not reliable and should not be accepted on their face. Respondent contends that petitioners' 1974 through 1977 returns are not correct because it is highly unlikely that petitioners reported all of their income for those years. We agree with respondent, especially in light of Mr. Larson's argument that he had been involved in drug trafficking since the early 1970s. Further, no undisclosed or other sources of income are reflected on the returns. Petitioners have failed to offer evidence other than the returns themselves. The taxable income for purposes of the base period is the correct income and not merely the income reported. Unser v. Commissioner, 59 T.C. 528, 530 (1973). Further, a taxpayer's testimony alone has been held insufficient to show that the income reported on the return is correct. Roberts v. Commissioner, 62 T.C. 834 (1974); Halle v. Commissioner, 7 T.C. 245, 247-248 (1946), *343 affd. 175 F.2d 500 (2d Cir. 1949); see also Abernathy v. Commissioner, T.C. Memo. 1978-370; Olive v. Commissioner, T.C. Memo. 1983-195; Padow v. Commissioner, T.C. Memo. 1987-250. Accordingly, we hold that petitioners have not carried their burden of showing their entitlement to income averaging. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. The delay that preceded the 1993 trial was due to petitioner Duane W. Larson's incarceration and numerous procedural and pretrial motions and matters, one of which resulted in the issuance of our memorandum opinion of Apr. 27, 1993. See Larson v. Commissioner, T.C. Memo. 1993-188↩.
2. All section references are to the Internal Revenue Code in effect for the tax years under consideration. Rule references are to this Court's Rules of Practice and Procedure.↩
3. The parties have entered in stipulated facts and exhibits which are incorporated in this opinion by this reference.↩
4. See also Blair v. Commissioner, T.C. Memo. 1988-581; Denison v. Commissioner, T.C. Memo. 1984-185, affd. 751 F.2d 241↩ (8th Cir. 1984).
5. The addition to tax for fraud is now contained in sec. 6663 of the Internal Revenue Code↩.