

Villanova University School of Law

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-8-2008

# USA v. Hall

Precedential or Non-Precedential: Precedential

Docket No. 07-2373

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Hall" (2008). *2008 Decisions.* Paper 1501.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1501

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-2373

———————

UNITED STATES OF AMERICA

v.

NEAL HALL,

Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D.Pa. Crim. No. 06-cr-00160-2)
District Judge: Honorable Paul S. Diamond

———————

Submitted under Third Circuit LAR 34.1(a)
December 14, 2007

BEFORE:  RENDELL, GREENBERG, and
VAN ANTWERPEN, Circuit Judges

(Opinion filed February 8, 2008)

———————

Peter Goldberger
Pamela A. Wilk
50 Rittenhouse Place
Ardmore, PA  19003-2276

Attorneys for appellant

Patrick L. Meehan
United States Attorney
Robert A. Zauzmer
Assistant United States Attorney
Chief of Appeals
Karen L. Grigsby
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

    Attorneys for appellee

---

OPINION OF THE COURT

---

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this court on an appeal from a judgment of conviction and sentence entered on March 21, 2007, on a plea of guilty in the District Court. The Government initiated the case on April 5, 2006, when it filed an information against appellant Neal Hall ("Hall") and his wife, Blonde Grayson-Hall ("Grayson-Hall"), charging them each with three counts of willful failure to file income tax returns in violation of 26 U.S.C. § 7203. On May 16, 2006, Hall and his wife, pursuant to plea agreements, entered pleas of guilty to each of the three counts of the information. On March 21, 2007, the District Court sentenced each defendant to a 12-month custodial term to be followed by 12-month terms of supervised release. Moreover, the court imposed a $20,000 fine on each defendant. Hall now challenges the procedure the District Court followed when he entered his plea and also challenges the sentence the court imposed. In particular, Hall contends that when he entered his plea of guilty the court failed to exercise the "special care" required during colloquies in cases involving tied plea agreements (usually called "package deal agreements"), the Government breached its promise in the plea agreement to

2

"[m]ake no recommendation as to the sentence," and the court imposed an unreasonably long custodial sentence on him. Grayson-Hall has not appealed.

## II. FACTS AND PROCEDURAL HISTORY

Hall, an ophthalmologist, and Grayson-Hall, an attorney, are residents of Philadelphia, Pennsylvania. During the times germane to these proceedings Hall operated Ophthalmic Associates, Inc. d/b/a Flourtown Eye Associates and Milan Designer Eyewear in Flourtown, Pennsylvania, and Wilmington Eye Associates in Delaware, and Grayson-Hall practiced law through Hall & Associates, LLC, a law firm in Philadelphia. In 1986, Hall incorporated Ophthalmic Research Associates ("ORA"), a non-profit organization in West Chester, Pennsylvania, with Hall as its chairperson and Grayson-Hall as its secretary and treasurer.

The Government's information charged that defendants willfully failed to file income tax returns for 1999, 2000, and 2001. After negotiations through separate attorneys, defendants entered into tied plea agreements with the Government, each agreement being conditioned on the entry of a guilty plea by the other defendant. Among other terms the Government's plea agreement with Hall included the following provision:

7.   At the time of sentencing, the government will:

  a.   Make no recommendation as to the sentence.

  b.   Comment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant; address the Court regarding the nature and seriousness of the offense; respond factually to questions raised by the Court; correct factual inaccuracies in the presentence report or sentencing record; and rebut any statement of facts made by

3

or on behalf of the defendant at sentencing.

    c.      Nothing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters.

App. at 5-6. Grayson-Hall's plea agreement, however, did not prohibit the Government from making a recommendation as to her sentence. As will be seen this distinction is at the core of one of the issues Hall raises on this appeal.

On May 16, 2006, the District Court conducted a joint plea hearing for defendants, who were present and represented by separate attorneys throughout the hearing, pursuant to Federal Rule of Criminal Procedure 11. That rule requires that before accepting a plea of guilty the court must "determine that the plea is voluntary and did not result from force, threats or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). During the hearing, the court engaged in a colloquy with Hall to determine whether his plea was voluntary that included the following exchanges:

> THE COURT: . . . Do you also understand that I will ask you questions to satisfy myself that you are competent and able to enter a plea, and to satisfy myself that you are knowingly and voluntarily giving up your rights in entering this plea?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If at any time you don't understand what I'm saying, you want to repeat anything, please let me know, okay?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And if at any time you want to speak to your lawyer, Mr. Miller, you let me know, we'll take a continuance, and we'll recess this matter for as long as you need to

speak with your counsel, all right?

THE DEFENDANT:  Yes, thank you.

* * *

THE COURT:  You have an attorney?

THE DEFENDANT: Yes.

THE COURT:  Mr. Miller?

THE DEFENDANT:  Yes.

THE COURT:  And have you had ample opportunity to discuss your case with Mr. Miller?

THE DEFENDANT:  Yes.

THE COURT:  And are you satisfied with Mr. Miller's representation of you?

THE DEFENDANT:  Yes.

* * *

THE COURT: . . . Has anyone made any threats or promises or assurances to you of any kind, other than what is set forth in the plea agreement to convince or induce you to plead guilty in this case?

THE DEFENDANT:  No.

* * *

THE COURT:  Now, you have heard me discuss with your wife the Government's condition of this case, that it would not negotiate [a] plea agreement

5

with only one of you, that either both of you pled guilty or you both went to trial. You heard me discuss that with her?

THE DEFENDANT: Yes.

THE COURT: And you have discussed that with your counsel?

THE DEFENDANT: Yes.

THE COURT: And are you voluntarily and freely electing to plead guilty, because you think, after consulting with your lawyer, it is in your best interest to do so?

THE DEFENDANT: Yes.

App. at 70, 72, 80-81. Following the District Court's colloquies with defendants it accepted their pleas of guilty to the three counts of willful failure to file income tax returns.

On March 21, 2007, the District Court conducted a sentencing hearing for both Hall and his wife. After the court denied each defendant's motion for a downward departure from the applicable base offense level, it concluded that both had base offense levels of 12 which, when combined with their criminal history categories of I, yielded a sentencing range of 10 to 16 months.

The District Court then considered defendants' motions for variances pursuant to 18 U.S.C. § 3553.[1] Grayson-Hall's attorney began the arguments on the motions by contending that a variance would be appropriate because defendants had paid, or were expected to pay, the amounts that they owed in taxes, and

---

[1]Apparently the parties distinguished between departures and variances by reason of our opinion in United States v. Vampire Nation, 451 F.3d 189, 195 n.2 (3d Cir. 2006).

6

they would not in the future fail to file tax returns because they had implemented a payroll service in their respective businesses that would withhold taxes. Grayson-Hall's attorney also referred to defendants' lifestyles, stating that "the Halls do not live a lavish life style," and that "[t]hey are by no measure wealthy." Supp. app. at 75. After Grayson-Hall's attorney finished his remarks, Grayson-Hall made a personal allocution.

Following Grayson-Hall's allocution, Hall's attorney made his arguments in support of Hall's motion for a variance. He began by referring to his earlier arguments referencing Hall's charitable work and Grayson-Hall's poor health. Hall's attorney then argued that a variance would be appropriate because "the nature and circumstances of the offense" warranted one. Supp. app. at 77. According to Hall's attorney:

> This is not a case and I think this is important, because what I'm about to say really takes Dr. Hall and for the [sic] matter, takes Mrs. Hall outside the heartland of offenders who really seek to cheat the Government out of taxes. This is not a case about greed. This is not a case about willful evasion. There is no evidence in the record that any of the money that should have gone to pay taxes was spent on luxury items. Was spent on vacations or clothing or cars or anything like that. That's simply not the case with both defendants.
>
> Quite to the contrary, they live a very modest life style. They have old cars, old clothes, a home in need of repair. They've taken one vacation in the last ten years. This is simply not a case about greed. And for that matter, I believe they fall outside, certainly Dr. Hall and Mrs. Hall, for that matter, fall outside the heartland of offenders who are seeking to cheat the Government out of taxes, your Honor.

Id.  Hall's attorney also argued that a variance was appropriate based on Hall's payments of the taxes that he owed and his acceptance of responsibility for his crimes.

After Hall's attorney completed his argument, Hall gave his allocution following which the Government responded to both defendants' arguments.  Without specifying at the outset the defendant to whom it was referring, the Government made the following statement:

> [Section] 3553(a) compels that we first look at the nature and circumstances of the offense.  And make no mistake here, the offense is failure to file returns.  This is not a case before your Honor of people who are being charged with failure to pay all they owed, having filed a return.  People who couldn't because of juggling financial responsibilities, come good on April 15th.  This is a case where for ten years, no tax returns were filed.  This isn't a case of miscalculation.  We filed a return.  We innocently thought that travel and entertainment and car expenses were deductible and so we deducted it in good faith.  But it turns out, no, that's wrong, so we didn't pay them.
>
> This is a case where, for ten years, no tax returns were filed.  No taxes were paid.  And not just federally.  No city wage, no state tax.  The only tax that has been paid here is property tax, because otherwise, the bank comes and takes your property.
>
> A decision not to file a return is a decision that you make every single day for ten years.  Every April 15th, when all your friends and colleagues are talking about having to file, it's a decision that you know you are making.  So, I think, first of all, it's important to look at the offense and what the offense is.  And the offense is fairly

8

stark.

Supp. app. at 82-83.

At this point, the Government distinguished between Hall and his wife by stating: "addressing Blonde first and again, I will just say for the record that my comments concerning Neal Hall will be very limited, because I do not want to run afoul of [United States v. Nolan-Cooper, 155 F.3d 221 (3d Cir. 1998)]." Supp. app. at 83. The Government proceeded to discuss Grayson-Hall's assets. During that discussion, it stated:

> I believe, she and Neal, between them have either [sic] or nine accounts that have been charged off and 11 that are in collection status or vice versa. It's a huge number of creditors who have been stiffed, just like the Government. It is a choice on their part. It is a choice to own property and not pay taxes. It is a choice to have hundreds of thousands of dollars of income and not pay taxes.

Supp. app. at 84-85. The Government then prefaced its subsequent arguments with the words "as to Blonde Hall," supp. app. at 85, and described Grayson-Hall's educational and professional background. The Government challenged her claim that she did not know she owed taxes, arguing that "if she didn't believe she owned [sic] money . . . [she could have] file[d] the tax returns showing no liability," and that "[s]he didn't do that, because she knew she did owe [taxes] and she knew that the IRS would reject her return as bogus." Supp. app. at 86.

After arguing that Grayson-Hall's statements concerning her lack of knowledge were not credible, the Government addressed defendants' arguments concerning their charitable works. The Government specifically addressed ORA, arguing:

> ORA was this charity that Neal and Blonde Hall started. And I think, significantly, in terms of understanding that charity, it should be

9

understood that Neal acquired a building in his name in West Chester, in his personal name. The Halls, Blonde in particular, well, the Halls then solicited donations for the renovation of the building for the work of ORA. But they did not disclose to the foundations and private contributors, that this building was owned in his name. So, in essence, they are getting charitable contributions to improve a facility that he – a building that he owns in his own name.

Supp. app. at 88. The Government argued that "what this money did, they basically solicited charitable money to improve their own station. To improve their own place in life, to improve their own financial standing." Supp. app. at 89. The Government then added, "I think that also speaks to who Blonde Hall is as a person, one of the factors under 3553(a)." Supp. app. at 89.

The Government concluded its response with the following statement:

Finally, I want to just very briefly address 3553(a) [which] requires that the sentence that you impose promote respect for the law and provide adequate deterrence. I think that's just incredibly important in a white-collar crime. People pay attention to crime [sic] likes [sic] this. I've gotten a phone call from a doctor in the community who read about this in the paper. And wants to know what their sentence is when they are sentenced.

You know, it calls to mind the statement of, was it Leona Helmsly, taxes are for little people. In other words, when you have the bus driver job, the fireman job, the taxes are withheld. But when you're a doctor or a lawyer, do you have to pay taxes? And is there a penalty if you don't. Is there a penalty beyond just, well, yes, now your building's appreciated all this much

10

and the IRS is going to take their penalty, but maybe your real estate has appreciated more than the IRS penalty is going to sock you for, so you still come out ahead. Or maybe, you get away with it entirely, in this case, because we are past the Statute of Limitations for some of the years. There will be no penalty for some of the years for which no returns were filed and no taxes paid.

So, I think that in terms of the public's perception of whether or not this is a significant crime, it's necessary to have a sentence of imprisonment. And Mr. Nastasi [Grayson-Hall's counsel] is right, I am asking for the top of the guidelines as to Blonde Hall. It's necessary to have a significant sentence of imprisonment to show people that, yes, you really do have to file your returns and pay taxes. It really is a significant crime. It may be white collar. Maybe nobody gets hurt. Maybe, you know, there's no gun, no threat of violence. But it has a significant impact. And it is a significant crime.

Supp. app. at 89-90. The Government added that "for those reasons, . . . as to Blonde Hall, I do ask for a sentence at the top of the guidelines. And as to Neal Hall, consistent with the government's plea agreement, it makes no recommendation." Supp. app. at 90.

Following the Government's argument, the District Court sentenced Grayson-Hall to 12 months imprisonment and an additional 12 months of supervised release, and imposed a fine of $20,000. The District Court then sentenced Hall. The court observed that he is "a highly educated, highly intelligent man [who has] acknowledged that [he] knew [he was] obligated to file tax returns" but "repeatedly failed to do so." Supp. app. at 100. Among the District Court's considerations was "the need for the sentence imposed to reflect the seriousness of the

11

offenses to which [Hall] pled guilty to promote respect for the law," "[t]o provide just punishment," "[t]o afford adequate deterrence to criminal conduct and to protect the public from any further crimes." Supp. app. at 100-01. Although the court noted that it "[did] not believe [Hall] will commit any other crimes," it stated that it "believe[d] that [Hall] brought the law into disrespect when a licensed doctor simply fails to file tax returns for year after year after year." Supp. app. at 101. The District Court explained that it "believe[d] a sentence of incarceration is a [sic] essential to promote respect for the law and to provide an adequate deterrence in these circumstances." Id. The court then imposed a sentence of 12 months imprisonment, followed by 12 months of supervised release, and a fine of $20,000, the same sentence that it imposed on Grayson-Hall. The District Court entered judgment against Hall on the same date, March 21, 2007. Hall then timely appealed.

## III. JURISDICTION AND STANDARDS OF REVIEW

The District Court had subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Hall challenges both the entry of his plea and the imposition of his sentence. With respect to the entry of his plea we evaluate the plea colloquy for plain error because he did not object in the District Court. See United States v. Vonn, 535 U.S. 55, 62-63, 122 S.Ct. 1043, 1048 (2002). Our review of the question of whether the Government breached its plea agreement with Hall is plenary even though he did not object at the time of the alleged breach. See United States v. Hodge, 412 F.3d 479, 484-85 (3d Cir. 2005). We review Hall's sentence on an abuse of discretion basis. See Gall v. United States, 128 S.Ct. 586, 594 (2007).

## IV. DISCUSSION

12

We begin by noting that even though Hall's plea agreement included a conditional waiver of his right to appeal, the Government has not moved to affirm summarily the appeal or even to limit its scope. We further observe that we "retain[] subject matter jurisdiction over [an] appeal by a defendant who ha[s] signed an appellate waiver." United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007). Accordingly, inasmuch as the Government addresses Hall's arguments on the merits, and we have jurisdiction, we will do the same notwithstanding Hall's waiver of the right to appeal.

A. Did the District Court exercise "special care" in determining whether Hall's plea, which was tied to Grayson-Hall's plea, was voluntary?

Hall argues that the District Court failed to exercise the "special care" required in determining whether his plea which he entered as part of a tied plea agreement with the Government was voluntary. See Hodge, 412 F.3d at 488. But he does not contend that he made this objection during the District Court's colloquy at the plea hearing. Thus, as we indicated above, we review Hall's special care contention bearing in mind that "a defendant who fails to object to Rule 11 error must carry the burden of showing on appeal that the error was 'plain, prejudicial, and disreputable to the judicial system.'" Id. (quoting Vonn, 535 U.S. at 65, 122 S.Ct. at 1050). In a plain error context, "a defendant must show that: (1) an error was committed; (2) the error was plain, that is, clear and obvious; and (3) the error affected the defendant's substantial rights." Id. (internal quotation marks omitted). "When those elements are satisfied, an appellate court in its discretion may order a correction if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S.Ct. 2333, 2340 (2004).

13

We have explained that there is a "package deal plea bargain[ ] [when] the government accepts a defendant's guilty plea on the condition that his co-defendant(s) also plead guilty." Hodge, 412 F.3d at 489. As we indicated in Hodge, "[t]here is no question that package deal plea bargains are constitutional," a "nearly axiomatic [conclusion] given the nature of our criminal justice system, of which plea bargains are an essential part." Id. at 490 (internal quotation marks omitted). Yet we also have observed that tied plea agreements "pose special risks, particularly when a trial court is unaware that defendants' pleas are tied together." Id. Accordingly, to address the risks associated with tied plea agreements, we require that "(1) package plea deals be disclosed to the court and (2) colloquies with package plea participants be conducted with special care." Id. at 489-90.

We have discussed the general terms of what constitutes "special care" in the context of a plea colloquy involving tied plea agreements:

> At the threshold, a district court notified of a package deal plea bargain should question counsel closely to ensure that the precise terms of the package plea deal are on the record. Once it is clear exactly how a defendant's plea benefits his confederate(s), it may be helpful to ask who first proposed the package deal, how extensively defense counsel was involved in developing the deal, and what benefit the defendant expects to gain from the deal. When asking whether a plea is a product of force, threats, or inducements and the like, a district court should take care not to ask only whether the prosecutor forced, threatened, or coerced the defendant, but whether anyone did so. Having so inquired, the court should be particularly attuned to even mild expressions of reluctance by a defendant. Such expressions always should trigger a more searching inquiry. On the other hand, as none of the defendants may be

14

> particularly eager to plead guilty, one
> defendant's expressions of reluctance should be
> compared to those of other defendants involved
> in the package deal.

Id. at 491-92 (internal citations omitted). We made clear, however, that this set of questions "is not a checklist that, if followed, automatically will prevent a Rule 11 colloquy from going awry," but instead "is a summary of lessons drawn from colloquies evaluated by other Courts of Appeals." Id. at 492. "The overarching rule is that a district court considering a package plea deal should be particularly attentive to a defendant's responses to voluntariness questions throughout a plea colloquy." Id. "That being said, district courts of course should remember that package deal plea bargains are not inherently coercive, and that the judge's goal is not to doom the deal but simply to ensure that the defendant's plea is voluntary." Id.

The record shows that the District Court was aware that Hall entered his plea as part of a tied plea agreement, and that it adequately exercised the "special care" required in determining that his plea was voluntary. Hall is a well-educated individual who graduated from a leading university and thereafter obtained his medical degree from a medical school at another leading university. Moreover, his attorney during the plea negotiations and at the plea hearing was separate from and independent of his wife's attorney. During his colloquy, the court asked whether anyone had made threats against Hall or promises to him to induce his plea, to which he replied "No." App. at 80. It then asked Hall whether "[you are] voluntarily and freely electing to plead guilty, because you think, after consulting with your lawyer, it is in your best interest to do so," to which Hall responded "Yes." App. at 80-81. The court confirmed that Hall had had the opportunity to consult with his attorney, who represented only him and not Grayson-Hall. Indeed, Hall demonstrated his awareness of his opportunity to consult with his attorney when, during the Government's presentation of the factual basis for his plea, he asked the court for permission to talk with his attorney privately, who subsequently clarified a

15

factual point that the Government previously had made. There is no indication in the record that Hall expressed "even mild expressions of reluctance" at any point during the plea hearing. Hodge, 412 F.3d at 492.

Hall argues that the District Court's questions concerning his plea deviated from those that we have recommended that a court ordinarily should use in considering guilty pleas when there are tied plea agreements. He fails, however, to give any reason for us to suspect that he did not make his plea knowingly and voluntarily.[2] Although the District Court did not ask Hall all of the questions that we suggested as examples in Hodge for a court to use when considering a package plea agreement, we have noted the Supreme Court's admonition that "[t]he nature of the inquiry required by Rule 11 must necessarily vary from case to case," McCarthy v. United States, 394 U.S. 459, 467 n.20, 89 S.Ct. 1166, 1171 n.20 (1969), and that "Rule 11 should not be given such a crabbed interpretation that ceremony was exalted over substance," Vonn, 535 U.S. at 70, 122 S.Ct. at 1052 (internal quotation marks omitted); see Hodge, 412 F.3d at 491. We have emphasized that the set of questions that we suggested in Hodge "is not a checklist," but rather "a summary of lessons," and that "[t]he overarching rule is that a district court considering a package plea deal should be particularly attentive to a defendant's responses to voluntariness questions throughout a plea colloquy." Hodge, 412 F.3d at 492.

Hall does not explain, at least not convincingly, how answers to questions that we suggested in Hodge that the District

---

[2]In fact, we note that when asked by the District Court whether his responses in his sentencing memorandum were inconsistent with his acceptance of responsibility and his desire to plead guilty, Hall filed a statement with the court confirming his willingness to plead guilty. Additionally, the District Court noted that "[e]ach Defendant's demeanor and the manner in which he or she answered my questions confirmed my belief that Mr. and Mrs. Hall did not wish to lose the benefits of their plea agreement and so were most willing to plead guilty." App. at 36-37.

16

Court did not ask in this case would have been particularly helpful in a determination of whether he entered his plea knowingly and voluntarily.  In fact, we are satisfied that the answers to the unasked suggested Hodge questions were not necessary in light of the proceedings before the District Court.  For example, although the court did not ask Hall how he stood to benefit from pleading guilty, the Government answered that question by informing the court that "as of this agreement, the defendant has demonstrated acceptance of responsibility, making him eligible for a two-level downward adjustment."  App. at 79.[3] In short, Hall has not identified evidence showing that there is "a reasonable probability that, but for the [claimed] error, he would not have entered the plea."  Dominguez Benitez, 542 U.S. at 83, 124 S.Ct. at 2340.

In reaching our conclusion on the voluntariness question we are struck by the fact that even though Hall on this appeal is being represented by experienced counsel who did not represent him in the District Court he does not flat out claim that his guilty plea was not voluntary.  While we recognize that he does not have to do so inasmuch as Dominguez Benitez speaks of a reasonable probability, rather than a certainty, of involuntariness, still it might be expected that he would make that claim unequivocally.  Instead, he indicates that "there is good reason to believe [his guilty plea] was not [voluntary]," appellant's br. at 21, this case had the "potential for involuntariness," id., and

_____

[3]Clearly we cannot know if Hall at a trial would have had a viable defense in this case.  Yet in view of his professional status, substantial income, and the ordinarily uncomplicated nature of a willful failure to file an income tax return case we cannot help but believe that he was in a difficult position and stood to benefit by negotiating a plea agreement and accepting responsibility.  We make this observation even though we are aware that a defendant does not necessarily lose a 2-level acceptance of responsibility adjustment merely because he pleads not guilty.  Rather, we do so because our experience teaches us that a defendant who pleads guilty is more likely to receive an acceptance of responsibility adjustment than a defendant convicted at trial.

there was "a substantial probability that [his] plea was involuntarily entered," id. at 27.

In fact the closest he comes to suggesting that there is a basis for believing that his plea might have been involuntary is his point that while his wife, who is an attorney, "benefitted substantially from the limitations of her plea, it is not nearly so clear that [he] faced any significant criminal exposure beyond that to which he pleaded guilty" and that "[s]ituations like this are rife with the potential for involuntariness." Id. at 20-21. To this point Hall adds that if questioned closer he "might well have revealed that he was pleading guilty solely because of the 'tied' nature of his wife's deal with the government, although he himself had little if anything to gain." Id. at 26.

We, however, reject as a matter of law a conclusion that a defendant who pleads guilty with his or her jointly charged defendant, whether or not his or her spouse, merely by entering that plea no matter how much it benefits the other defendant and how little it benefits the defendant challenging the plea has acted involuntarily. Moreover, in this case there is a special reason to reject the theory that a tied plea agreement is involuntary merely because the defendants receive unequal benefits from it because Hall's co-defendant, who benefitted from his guilty plea, just as he may have benefitted from her guilty plea, is as different as can be from the type of co-defendants in many of the cases we see and hardly would have been likely to have threatened or coerced Hall into entering a plea of guilty. We do not understand how a court could regard a guilty plea as involuntary merely because the defendant pleading guilty assisted his or her spouse more than he assisted himself or herself for it is natural that a defendant would want to assist his or her spouse.[4] In any event a conclusion that tied pleas with unbalanced benefits are suspect inevitably would doom tied plea agreements as that approach frequently would open up such agreements to involuntariness challenges on the basis of an after-the-fact

---

[4]The presentence report described defendants' marriage as intact.

18

analysis of the comparative benefits to the defendants of the tied plea agreements.

On the record, then, we conclude that the District Court exercised the "special care" required in its colloquy concerning the voluntariness of Hall's plea, and accordingly we find no error in its acceptance of his plea.

> B.  Did the Government breach its plea agreement with Hall requiring that it "[m]ake no recommendation as to the sentence," by arguing that Hall's failure to file tax returns, to which both Hall and his co-defendant pleaded guilty, warranted a sentence of imprisonment?

Hall contends that the Government breached its plea agreement with him by making prohibited statements during the sentencing hearing.  The plea agreement provided that the Government would "[m]ake no recommendation as to the sentence," but was allowed to "[c]omment on the evidence and circumstances of the case," "bring to the Court's attention all facts relevant to sentencing including evidence relating to . . . the character and any criminal conduct of the defendant," and "address the Court regarding the nature and seriousness of the offense . . . ."  App. at 5-6.  Hall argues that the Government breached the agreement by arguing that the court should impose a sentence of imprisonment on him.  The Government responds that its comments that Hall challenges pertained to Grayson-Hall rather than to him.

In determining whether the Government has breached its plea agreement with a defendant, we apply the de novo standard of review.  United States v. Rivera, 357 F.3d 290, 293-94 (3d Cir. 2004).  To the extent, however, that parties dispute the facts of a case, we review the District Court's findings of fact for clear error.  United States v. Moscahlaidis, 868 F.2d 1357, 1360 (3d Cir. 1989).  In this case, we do not predicate our determination on the District Court's findings of fact and thus our review is plenary.

The rules for enforcing plea agreements are well established. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 499 (1971). "Because the defendant, by entering into the plea, surrenders a number of [his] constitutional rights, 'courts are compelled to scrutinize closely the promise made by the government in order to determine whether it has been performed.'" United States v. Nolan-Cooper, 155 F.3d 221, 236 (3d Cir. 1998) (quoting United States v. Hayes, 946 F.2d 230, 233 (3d Cir. 1991)).

In determining whether the Government has breached a plea agreement, a court "must determine 'whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty.'" Id. (quoting United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992)). "Accordingly, we will not permit the government to rely upon a 'rigidly literal' approach to the construction of the terms of the plea agreement." Id. (quoting Moscahlaidis, 868 F.2d at 1361).

Although "[t]he government need not endorse the terms of its plea agreements enthusiastically," Badaracco, 954 F.2d at 941 (internal quotation marks omitted), it nonetheless "must adhere strictly to the terms of the bargain it strikes with defendants." Moscahlaidis, 868 F.2d at 1361 (internal quotation marks omitted). "[T]he doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated." Nolan-Cooper, 155 F.3d at 236 (internal quotation marks omitted). If we find that the Government has breached its plea agreement, we "remand the case to the district court for it to determine whether to grant specific performance or allow withdrawal of the plea." Moscahlaidis, 868 F.2d at 1363.

Here, as we have indicated, the Government promised to

20

"[m]ake no recommendation as to the sentence," rather than take no position regarding Hall's sentence. App. at 5. We have pointed out that "[t]he difference between [making a recommendation and taking a position] is elementary, for the promise not to recommend is narrow, speaking only as to the sentence to be imposed, whereas a promise to take no position speaks to no attempt at all to influence the defendant's sentence." United States v. Miller, 565 F.2d 1273, 1275 (3d Cir. 1977). Nevertheless, though the distinction between making a "recommendation" and taking a "position" may be elementary in its articulation, it may be difficult to determine in a particular case whether the Government at the sentencing made a recommendation or took a position.

The Government acknowledges that if it had contended that the court should impose a sentence of imprisonment on Hall it would have breached its plea agreement. But the Government argues that it directed its statement that the court should impose a sentence of imprisonment solely to Grayson-Hall. Of course, if we conclude that the Government directed its recommendation of a sentence of imprisonment at Hall, it would not matter whether it did so "inadvertent[ly]," or whether the statements "influence[d] the judge in the sentence imposed . . . ." Nolan-Cooper, 155 F.3d at 236.

At the sentencing hearing, after briefly discussing the circumstances of the case, as it was permitted to do under the plea agreement, the Government noted that almost all of the rest of its comments would pertain to Grayson-Hall. The Government's comments strongly suggest that it was aware that it could make no sentencing recommendation as to Hall: "I will just say for the record that my comments concerning Neal Hall will be very limited, because I do not want to run afoul of Nolan[-]Cooper." Supp. app. at 83. After making this statement, the Government proceeded to address Grayson-Hall's role in the crimes and her circumstances relevant to § 3553. Id. at 83-89.

Towards the end of its comments at the hearing, the Government argued:

> Finally, I want to just very briefly address 3553(a) [which] requires that the sentence that you impose promote respect for the law and provide adequate deterrence. I think that's just incredibly important in a white-collar crime. People pay attention to crime [sic] likes [sic] this.

> \* \* \*

> Is there a penalty [for not paying taxes] beyond just, well, yes, now your building's appreciated all this much and the IRS is going to take their penalty, but maybe your real estate has appreciated more than the IRS penalty is going to sock you for, so you still come out ahead. Or maybe, you get away with it entirely, in this case, because we are past the Statute of Limitations for some of the years. There will be no penalty for some of the years for which no returns were filed and no taxes paid.

> \* \* \*

> So, I think that in terms of the public's perception of whether or not this is a significant crime, it's necessary to have a sentence of imprisonment.

Id. at 89-90. After making these statements, the Government for the first time in the hearing made an explicit recommendation as to sentencing: "So, I think that in terms of the public's perception of whether or not this is a significant crime, it's necessary to have a sentence of imprisonment." Id. at 90. The Government followed that statement by noting that it was asking for a sentence of imprisonment at the "top of the guidelines as to Blonde Hall." Id. The Government then added:

22

It's necessary to have a significant sentence of imprisonment to show people that, yes, you really do have to file your returns and pay taxes. It really is a significant crime. It may be white collar. Maybe nobody gets hurt. Maybe, you know, there's no gun, no threat of violence. But it has a significant impact. And it is a significant crime.

Id. In concluding its remarks, the Government stated that, "as to Blonde Hall, I do ask for a sentence at the top of the guidelines. And as to Neal Hall, consistent with the Government's plea agreement, it makes no recommendation." Id.

The Government therefore described the failure to file tax returns as a "significant crime" after it stated that "in terms of the public's perception of whether or not this is a significant crime, it's necessary to have a sentence of imprisonment." Id. In arguing that the court's sentence must "reflect the seriousness of the offense," "promote respect for the law," and "afford adequate deterrence," 18 U.S.C. § 3553(a)(2)(A)-(B), the Government argued that a sentence of imprisonment was necessary because of the significance of the crime. Though we are satisfied that in making this argument the Government made statements concerning "the nature and seriousness of the offense" that it as well as anyone else reasonably could have regarded as being within the bounds of the plea agreement, Hall suggests that the statements might be viewed as constituting a "recommendation as to the sentence" that the agreement precluded.

But, as we have indicated, the Government argues that given how the District Court entertained defendants' respective arguments, the Government directed its statements concerning the seriousness of their crimes and the need for a sentence of imprisonment only at Grayson-Hall. There are obvious difficulties with this contention because defendants committed the same offenses in the same way and, in every sense of the

term, were joint defendants. Indeed, as Hall points out, the crime was "the same . . . for both defendants." Appellant's br. at 17. Thus, when the Government addressed the deliberate and serious nature of the crime of failing to file a tax return, it inevitably was addressing the conduct of both defendants. In this regard we note that after both defendants had made their allocutions the Government stated that:

> [Section] 3553(a) compels that we first look at the nature and circumstances of the offense. And make no mistake here, the offense is failure to file returns. This is not a case before your Honor of people who are being charged with failure to pay all they owed, having filed a return. People who couldn't because of juggling financial responsibilities, come good on April 15th. This is a case where for ten years, no tax returns were filed. This isn't a case of miscalculation. We filed a return. We innocently thought that travel and entertainment and car expenses were deductible and so we deducted it in good faith. But it turns out, no, that's wrong, so we didn't pay them.
>
> This is a case where, for ten years, no tax returns were filed. No taxes were paid. And not just federally. No city wage, no state tax. The only tax that has been paid here is property tax, because otherwise, the bank comes and takes your property.
>
> A decision not to file a return is a decision that you make every single day for ten years. Every April 15th, when all your friends and colleagues are talking about having to file, it's a decision that you know you are making. So, I think, first of all, it's important to look at the offense and what the offense is. And the offense is fairly stark.

24

Supp. app. at 82-83. After the foregoing comments, however, as noted above, the Government did distinguish between defendants, stating that it would address Grayson-Hall's role in the crime first and that its comments with regard to Hall were limited by <u>Nolan-Cooper</u>. <u>Id</u>. at 83. The Government then discussed Grayson-Hall's income and assets, after which it stated:

> I believe, she and Neal, between them have either [sic] or nine accounts that have been charged off and 11 that are in collection status or vice versa. It's a huge number of creditors who have been stiffed, just like the Government. It is a choice on their part. It is a choice to own property and not pay taxes. It is a choice to have hundreds of thousands of dollars of income and not pay taxes.

<u>Id</u>. at 84-85.

The circumstances of this case ensured that though much of the Government's argument concerning the nature of the crimes did not refer expressly to either Hall or Grayson-Hall, in effect the Government inevitably referred to both defendants inasmuch as they committed the same crime in precisely the same way. Thus, when the Government argued that "in terms of the public's perception of whether or not this is a significant crime, it's necessary to have a sentence of imprisonment," <u>id</u>. at 90, despite the Government's earlier admonishments that its comments pertained to Grayson-Hall, it may have been somewhat difficult to distinguish between defendants. Furthermore, even the mitigating circumstances of the case, for example defendants' lifestyles, largely were the same. The fact is that the Government in its comments could not draw the line between defendants with surgical precision though it did try to make clear to the District Court that its comments were in reference to Grayson-Hall only. It is understandable that it had this difficulty for even Hall's attorney could not, or at least did not, draw a fine line between defendants when addressing the court at sentencing, for he pointed out that his arguments in

25

favor of leniency applied to both of them.

It is, however, highly significant that Hall's attorney proposed and consented to having Grayson-Hall sentenced first. Although the Government acknowledges that it did not distinguish between defendants during much of its section 3553(a) argument, it argues that it was unnecessary to do so given the manner in which the District Court conducted the hearing and Hall's consent to the arrangement. The Government contends that "the district court conducted each phase of the [sentencing] hearing jointly, but always addressed Mrs. Hall first," and that "[n]o one objected to this format." Appellee's br. at 25-26. The Government notes that prior to sentencing, Hall's attorney wrote a letter to the District Court informing it that "Mr. Nastasi [attorney for Grayson-Hall] and I have conferred and respectfully request that the Court proceed first with Mrs. Grayson-Hall's sentencing, followed by Mr. Hall's sentencing." Supp. app. at 1. Thus, the Government's brief is fair when it points out that "it was Dr. Hall's counsel who asked the court to sentence Mrs. Hall first, . . . thereby ensuring that the court would hear the government's ardent advocacy concerning Mrs. Hall before it imposed sentence on Dr. Hall."[5] Appellee's br. at 39. The Government further contends that while "the district court provided a single opportunity for allocution," "the government used that opportunity to speak extensively about Mrs. Hall and to say virtually nothing about Dr. Hall." Id. at 38.

_____

[5]In the unusual situation here in which defendants were so similarly situated but the Government could make a sentencing recommendation only as to Grayson-Hall, it might have been better for the District Court to hear Hall's arguments first and sentence him before hearing her arguments and then sentencing her. Obviously, however, we could not find that it erred in not doing so inasmuch as Hall did not request that the court follow that procedure, and we could not regard its failure to do as a plain error. Indeed, if the court erred in proceeding as it did at sentencing, inasmuch as it followed Hall's request in sentencing his wife first its error would have been an almost unreviewable invited error. See United States v. Console, 13 F.3d 641, 660 (3d Cir. 1993).

26

We emphasize that even though in addressing the sentence recommendation issue we naturally primarily have discussed those statements by the Government that could be considered as recommending a sentence for Hall, most of the Government's argument concerning the 18 U.S.C. § 3553(a) sentencing factors undoubtedly was consistent with its plea agreement with Hall, either because the Government plainly directed its statements to Grayson-Hall or because the statements concerned Hall's "character and any criminal conduct," which his plea agreement permitted. App. at 5. For example, the Government notes that it "spoke at length concerning the other Section 3553(a) factors as they concerned Mrs. Grayson-Hall barely mentioning Dr. Hall's name, and only doing so in the context of a reference to her credit card debt (the [presentence report] did not distinguish her debt from his) and her activities at ORA (which, factually, were joint activities with him) . . . ." Appellee's br. at 29. Thus, the parties agree that the Government's comments regarding Hall in its discussion of Grayson-Hall's involvement with ORA would not constitute a breach of its plea agreement with Hall because they constitute "facts relevant to sentencing including evidence relating . . . to the character and any criminal conduct of the defendant . . . ." App. at 5; see appellee's br. at 34; appellant's br. at 15. For that same reason, we also note that the Government's comments regarding Hall in discussing defendants' assets did not violate Hall's plea agreement.

In retrospect Hall may have been unrealistic to expect, if he did so, that the Government's statements regarding Grayson-Hall's sentence would not have the capacity to impact on the court when it considered his sentence. In fact, Hall likely should have expected that, in light of the plea agreement reached by his wife and the identical role in the crimes played by Hall and Grayson-Hall, the Government would be making recommendations and comments as to Grayson-Hall that could affect him. There is no escape from the reality that this case differs from criminal cases such as drug trafficking conspiracies in which different defendants may have different roles in the offenses and may have different criminal records so that a recommendation as to one defendant will have limited or no

27

effect on the case of another defendant. Hall and his wife committed identical offenses in identical ways and each could point to the same mitigating sentencing factors on his or her own behalf. Nonetheless, Hall proposed and consented to the manner in which his sentencing occurred, i.e., in a joint proceeding in which Grayson-Hall would be sentenced first, which gave rise to the possibility that comments meant to refer to his wife could be taken as referring to his situation as well. Hall's express request for and consent to this arrangement, when taken in conjunction with the Government's explicit recognition of the terms of Hall's plea agreement and its statement that it was limiting its sentencing comments to Grayson-Hall, leads us to conclude that the Government's comments did not constitute a sentencing recommendation for Hall. In the circumstances, we find no error, or at least no plain error, in the court's acceptance of Hall's proposed arrangement, and we are satisfied that the Government did not breach the plea agreement by making a recommendation as to Hall's sentence.

C. Was the District Court's sentence of Hall to a one-year custodial term unreasonable?

Hall argues that his sentence, which fell within the range recommended by the Sentencing Guidelines, was unreasonable because the Guidelines, which "evaluate tax felonies with an element of fraud exactly the same as they do tax misdemeanors which involve no more than a willful neglect of a known statutory filing duty," are unreasonable. Appellant's br. at 28. Hall further argues that his prison sentence of one year was unreasonably high when compared to national statistics concerning sentences for tax evasion. After our review of this matter and our consideration of the Supreme Court's recent sentencing pronouncements in Gall v. United States, 128 S.Ct. at 586, as well as its earlier decisions and our own precedents, we are satisfied that we cannot hold that the District Court abused its discretion in the imposition of the sentence and thus we cannot disturb it.

## V. CONCLUSION

For the foregoing reasons we will affirm the judgment of conviction and sentence entered March 21, 2007.

———