T.C. Memo. 2013-93

UNITED STATES TAX COURT

BLONDE GRAYSON HALL AND NEAL E. HALL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25701-08L.                    Filed April 4, 2013.

Blonde Grayson Hall and Neal E. Hall, pro sese.

<u>Harry J. Negro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  This proceeding was commenced in response to Notices of

Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1]

---

[1]All section references are to the Internal Revenue Code (Code) in effect at
all relevant times, and all Rule references are to the Tax Court Rules of Practice and
(continued...)

**[\*2]** The first notice of determination, dated September 23, 2008, sustained the filing of a notice of Federal tax lien for Blonde Grayson Hall for her tax liabilities for the taxable years 1998, 1999, 2000, and 2001. The second notice of determination, dated September 23, 2008, sustained the filing of a notice of Federal tax lien for the joint liabilities of Blonde Grayson Hall and Neal Hall for the taxable years 2002, 2003, 2004, and 2006.

One of the issues raised by Blonde Grayson Hall for the taxable years 1998, 1999, 2000, and 2001 is whether an agreement she signed that allowed the assessment of tax for those years prevents her from contesting the amounts of those liabilities in this proceeding. Petitioner contends that the agreement is invalid because it was signed under duress.

On January 20, 2012, respondent moved, pursuant to Rule 141(b), that the Court bifurcate this proceeding so that the upcoming trial be restricted to the issue of whether Blonde Grayson Hall is precluded from challenging her underlying liabilities for the taxable years 1998, 1999, 2000, and 2001 because she previously agreed to the assessment of those liabilities by signing Form 4549, Income Tax Examination Changes. By order dated January 31, 2012, we granted respondent's

---

[1](...continued)
Procedure, unless otherwise indicated.

[*3] motion.  Thus, the issue before us is whether Blonde Grayson Hall should be relieved of her agreement in the Form 4549 because it was signed under duress.

FINDINGS OF FACT

At the time the petition was filed, petitioner resided in Pennsylvania. Petitioner's husband, Neal Hall, is listed as a petitioner on the petition.  Since the only issue currently before the Court is whether Blonde Grayson Hall signed the Form 4549 under duress we will refer to Blonde Grayson Hall as petitioner.

Petitioner attended the University of Michigan Law School and was admitted to practice law in 1982.  Petitioner was the chief executive officer of Hall & Associates, LLC, a law firm in Philadelphia, Pennsylvania, from 1995 to 2006.

Prior Criminal Proceeding

In 2002 the Internal Revenue Service commenced a criminal investigation of petitioner for failing to file Federal income tax returns since 1995.  On May 16, 2006, petitioner and her husband were convicted of willful failure to file tax returns pursuant to a plea agreement in the U.S. District Court for the Eastern District of Pennsylvania.  They agreed to plead guilty to three counts of willful failure to file tax returns under section 7203 for the tax years 1999, 2000, and 2001.  As part of the plea agreement petitioner agreed to "properly execute and deliver to the IRS Examination Division IRS Form 4549 or IRS Form 870 for the

[*4] years 1997 through 2005" prior to her sentencing.  Petitioner signed the plea agreement in March 2006 and signed the Form 4549 in April 2006.[2]

Form 4549 lists adjustments to taxable income and the corrected tax liability and balance due.  Form 4549 reflects a taxpayer's consent to the Commissioner's immediate assessment and collection of the taxes, penalties, and interest included therein.  See Urbano v. Commissioner, 122 T.C. 384, 394 (2004); Gilmer v. Commissioner, T.C. Memo. 2009-296, 2009 Tax Ct. Memo LEXIS 299, at *9 n.7.  In pertinent part Form 4549 states:

> Consent to Assessment and Collection -- I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report.  Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law.   * * *

Before accepting petitioner's guilty plea and plea agreement, the District Court was required to determine that the guilty plea and plea agreement were voluntary.  See Fed. R. Crim. P. 11(b); see also United States v. Hall, 515 F.3d 186, 189 (3d Cir. 2008).  Accordingly, on May 16, 2006, U.S. District Judge Paul S. Diamond held a plea hearing to determine whether petitioner's guilty plea and

---

[2]Neither petitioner nor respondent offered the Form 4549 into evidence. Respondent stated to the Court that the Form 4549 was sealed by the District Court. There is no question that petitioner signed the Form 4549.

[*5] plea agreement were voluntary. Petitioner was sworn under oath, and Judge Diamond informed her that she would be subject to perjury penalties if she did not tell the truth. There followed this colloquy:

[THE DISTRICT COURT]: You've been a practicing lawyer for how long?

[PETITIONER]: Since 1982, to [sic] about 24 years.

[THE DISTRICT COURT]: And what kind of law did you practice?

[PETITIONER]: Real estate, finance, and general corporate.

[THE DISTRICT COURT]: At the University of Michigan Law School, did you study Constitutional law, criminal law, criminal procedure?

[PETITIONER]: Not criminal procedure, but the prior to, [sic] yes.

[THE DISTRICT COURT]: Constitutional law?

[PETITIONER]: Yes.

[THE DISTRICT COURT]: You understand that you don't have to plead guilty to this information, do you not?

[PETITIONER]: Yes.

[THE DISTRICT COURT]: You're doing this voluntarily?

[PETITIONER]: Yes, your Honor.

**[*6]**        [THE DISTRICT COURT]:  You're doing it on advice of counsel, because you think its in your own best interest to do so?

[PETITIONER]:  Yes, your Honor.

*      *      *      *      *      *      *

[THE DISTRICT COURT]:  [H]as anyone made any threat or promise or assurance to you of any kind, other than what is set forth in the plea agreement to convince or induce you to plead guilty in this case?

[PETITIONER]:  No.

Judge Diamond confirmed with petitioner that she had read the plea agreement and had reviewed it with her attorney.  Judge Diamond confirmed with petitioner's attorney, Nicholas Nastasi, Sr., and Assistant United States Attorney Karen Grigsby that petitioner's willingness to plead guilty was voluntary.

[THE DISTRICT COURT]:  Do you understand that by pleading guilty, and by waiving the rights I have discussed with you, you cannot later come to any court and claim that you were not guilty or that your rights have been violated?

[PETITIONER]:  Yes.

Judge Diamond accepted petitioner's guilty plea and found that her plea was voluntary.  On March 21, 2007, Judge Diamond held a sentencing hearing for petitioner and her husband.  At allocution petitioner stated to the District Court that she was "greatly apologetic and very regretful that -- to the Government and

[*7] to the Court -- that I have violated the tax laws." Petitioner's husband stated to the District Court: "I assure you, * * * [petitioner] and I have taken the necessary steps to make sure we never come before this Court or any court regarding these matters." Judge Diamond sentenced petitioner and her husband to 12 months imprisonment, an additional 12 months of supervised release, and imposed a fine of $20,000. Judge Diamond advised petitioner of her rights to appeal the sentence and she confirmed that she understood her rights. Petitioner did not appeal her conviction or sentence. Petitioner's husband appealed his conviction and sentence. Hall, 515 F.3d at 188. The conviction and sentence were affirmed. Id. at 203.

Procedural History

On August 17, 2006, petitioner made advance payments of her tax deficiencies for the taxable years 1998, 1999, 2000, and 2001. On August 6, 2007, respondent assessed taxes, penalties, and interest for the taxable years 1998, 1999, 2000, and 2001. Petitioner's advance payments were for the full amounts of her tax deficiencies for the taxable years 1998, 1999, 2000, and 2001. However, petitioner did not make any payments for the interest and penalties assessed by respondent.

[*8]   On February 5, 2008, respondent filed a notice of Federal tax lien regarding petitioner's unpaid interest and penalties for the taxable years 1998, 1999, 2000, and 2001.  Respondent sent petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated February 5, 2008, advising petitioner that a notice of Federal tax lien had been filed with respect to her unpaid liabilities for the taxable years 1998, 1999, 2000, and 2001 and that she could request a hearing with respondent's Office of Appeals.  Petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, in which she requested an installment agreement and that all fraud penalties be abated.  The settlement officer scheduled a telephonic collection due process (CDP) hearing for September 17, 2008.  At the hearing petitioner claimed that she had signed the Form 4549 under duress.

Respondent issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated September 23, 2008, determining that respondent had followed all legal and procedural requirements in the filing of the notice of Federal tax lien and that the filing was appropriate.  The notice of determination stated that petitioner's balance due was $322,635.27 for the taxable years 1998, 1999, 2000, and 2001.  Petitioner timely filed a petition with this Court.  By order dated April 16, 2010, we remanded this case to

**[*9]** respondent's Office of Appeals for a further hearing on the issue of whether petitioner had signed the Form 4549 under duress and, if so, whether the Form 4549 is invalid due to such duress.

Respondent issued petitioner a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated May 6, 2011, determining that petitioner did not sign the Form 4549 under duress and sustaining the filing of the notice of Federal tax lien.

OPINION

Section 6321 provides that if any person liable to pay any tax neglects or refuses to do so after demand, the amount shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. Section 6323 authorizes the Commissioner to file a notice of Federal tax lien. Pursuant to section 6320(a) the Commissioner must provide the taxpayer with notice of and an opportunity for an administrative review of the propriety of the filing. See Katz v. Commissioner, 115 T.C. 329, 333 (2000). If a taxpayer requests a CDP hearing, she may raise at that hearing any relevant issue relating to the unpaid tax or the lien. Sec. 6330(c)(2).

The Court reviews administrative determinations by the Commissioner's Office of Appeals regarding nonliability issues for abuse of discretion. Hoyle v.

[*10] Commissioner, 131 T.C. 197, 200 (2008); Goza v. Commissioner, 114 T.C. 176, 182 (2000). The determination of the Office of Appeals must take into consideration: (1) the verification that the requirements of applicable law and administrative procedure have been met; (2) issues raised by the taxpayer; and (3) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection be no more intrusive than necessary. Secs. 6320(c), 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

If a taxpayer's underlying liability is properly at issue, the Court reviews any determination regarding the underlying liability de novo. Goza v. Commissioner, 114 T.C. at 181-182. A taxpayer may challenge the existence or amount of the underlying tax liabilities if the taxpayer did not receive any statutory notice of deficiency for such tax liabilities or did not otherwise have an opportunity to dispute such tax liabilities. Sec. 6330(c)(2)(B). A taxpayer who waives her right to challenge the proposed assessments is deemed to have had the opportunity to dispute the underlying tax liabilities and is thereby precluded from challenging those tax liabilities in the CDP hearing or before this Court. See Aguirre v. Commissioner, 117 T.C. 324, 327 (2001); Coleman v. Commissioner, T.C. Memo. 2007-263, 2007 Tax Ct. Memo LEXIS 264, at *3-*4. By signing

[*11] Form 4549 a taxpayer waives her right to raise the issue of her underlying liabilities in this Court. See Aguirre v. Commissioner, 117 T.C. at 327; Coleman v. Commissioner, 2007 Tax Ct. Memo LEXIS 264, at *3-*4.

Petitioner signed the Form 4549. Consequently, petitioner's challenge to the amounts of her liabilities listed in the Form 4549 will not properly be before the Court unless she signed the Form 4549 under duress. See Shireman v. Commissioner, T.C. Memo. 2004-155, 2004 Tax Ct. Memo LEXIS 160, at *8. Petitioner bears the burden of proving that the Form 4549 is invalid because she signed it under duress. See Rule 142(a); see also Jarvis v. Commissioner, T.C. Memo. 1980-381, 1980 Tax Ct. Memo LEXIS 207, at *9; Robertson v. Commissioner, T.C. Memo. 1973-205, 1973 Tax Ct. Memo LEXIS 81, at *11-*12.

"It is now well settled that if an act of one party deprives another of his freedom of will to do or not to do a specific act the party so coerced becomes subject to the will of the other, there is duress, and in such a situation no act of the coerced person is voluntary and contracts made in such circumstances are void because there has been no voluntary meeting of the minds of the parties". Diescher v. Commissioner, 18 B.T.A. 353, 358 (1929). "We have defined duress as actions by one party which deprive another of his freedom of will to do or not to do a specific act." Price v. Commissioner, T.C. Memo. 1981-693, 1981 Tax Ct.

**[*12]** Memo LEXIS 47, at *12, <u>aff'd without published opinion</u>, 742 F.2d 1460 (7th Cir. 1984).  However, actions that deprive another of her freedom of will are distinguishable from legally authorized actions that merely limit another to choose between options that are not desirable.

"Every person is always legally bound to comply with the law--but is not thereby under duress."  <u>George v. Commissioner</u>, 139 T.C. ___, ___ (slip op. at 12) (Dec. 19, 2012) (The threat of judicial contempt for not complying with a court order to sign Form 8332, Release of Claim to Exemption for Child of Divorced or Separated Parents, does not constitute duress.)  "It is not duress on the part of respondent, however, to notify the taxpayer that he intends to use all lawful means to assess and collect the tax."  <u>Price v. Commissioner</u>, 1981 Tax Ct. Memo LEXIS 47, at *12.  The assertion by the Commissioner of an intention to pursue a legal remedy is not ordinarily considered duress, especially when the taxpayer has a lawyer and there is ample time for deliberation.  <u>See</u> <u>United States v. Martin</u>, 274 F. Supp. 1002, 1005-1006 (E.D. Mo. 1967), <u>aff'd</u>, 411 F.2d 1164 (8th Cir. 1969).

We have held that duress does not exist when the Commissioner threatens to take legally authorized actions if a taxpayer does not sign Form 4549.  <u>See</u> <u>Shireman v. Commissioner</u>, 2004 Tax Ct. Memo LEXIS 160, at *8 (citing <u>Ballard v. Commissioner</u>, T.C. Memo. 1987-471, 1987 Tax Ct. Memo LEXIS 467, at *8,

**[*13]** aff'd without published opinion, 851 F.2d 359 (5th Cir. 1988)). If the Commissioner's actions leading up to the taxpayer signing Form 4549 were authorized by law, then those actions do not give rise to duress or coercion. See Zapara v. Commissioner, 124 T.C. 223, 228 (2005), aff'd, 652 F.3d 1042 (9th Cir. 2011).

Petitioner and her husband pled guilty to willful failure to file tax returns pursuant to a plea agreement before the District Court. Petitioner agreed to sign the Form 4549 for the taxable years 1997 through 2005 because it was a condition of the plea agreement offered by the Government and accepted by petitioner. The requirement that petitioner sign the Form 4549 stems from the Government's efforts to prosecute her for admittedly criminal conduct and to collect taxes and penalties. No doubt, given the circumstances, these efforts were zealous and disadvantageous to petitioner. However, every criminal defendant who is offered a plea agreement faces an equally unpalatable decision--accept a legally authorized plea agreement that will include terms disadvantageous to the criminal defendant or go to trial which may result in significantly worse consequences for the criminal defendant. This unpalatable decision does not constitute duress or involuntariness. See Brady v. United States, 397 U.S. 742, 755 (1970) (a plea of

**[\*14]** guilty is not involuntary merely because it was entered to avoid the possibility of a death penalty).

Petitioner has not presented any evidence that the Government's efforts went beyond what the law prescribes. In fact there is substantial evidence that petitioner's decision to sign the Form 4549 as part of her plea agreement was in fact voluntary. Rule 11(b)(2) of the Federal Rules of Criminal Procedure requires that before a court can accept "a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." On May 16, 2006, Judge Diamond held a plea hearing and extensively questioned petitioner before he concluded that her "plea of guilty is voluntary, and not the result of force, or threats, or promises, apart from the plea agreement disclosed on this record". Petitioner's attorney, Nicholas Nastasi, Sr., who represented her in the criminal proceeding, confirmed to Judge Diamond that petitioner's willingness to plead guilty was voluntary.[3] Judge Diamond noted that petitioner and her husband "did not wish to lose the benefits of their plea agreement and so were most willing to plead guilty." Hall, 515 F.3d at 196 n.2.

---

[3]We note that petitioner did not call Mr. Nastasi as a witness.

**[\*15]** We note that petitioner, unlike her husband, did not appeal her conviction or sentence.

Petitioner's husband appealed his guilty plea to the Court of Appeals for the Third Circuit, arguing that the District Court did not exercise special care in determining whether his plea, which was tied to petitioner's plea, was voluntary. Id. at 194. In his appeal, petitioner's husband argued that his plea agreement was involuntary because his plea agreement benefited petitioner more than him. Id. at 196-197. The Court rejected petitioner husband's argument and held that there was no error in the District Court's acceptance of his plea. Id. at 197 ("We, however, reject as a matter of law a conclusion that a defendant who pleads guilty with his or her jointly charged defendant, whether or not his or her spouse, merely by entering that plea no matter how much it benefits the other defendant and how little it benefits the defendant challenging the plea has acted involuntarily.").

Petitioner relies on Robertson v. Commissioner, 1973 Tax Ct. Memo LEXIS 81, to argue that she was under duress. However, petitioner's factual situation is different. In Robertson, the Court noted that the taxpayers were "honest, forthright and candid witnesses" who had employed an attorney to file their Federal income tax return, which was filed early. Id. at \*13. Additionally, the Court found that the Commissioner had harassed the taxpayers. Id. at \*19. On the

**[\*16]** other hand, we find that petitioner did not file Federal income tax returns for the taxable years 1998, 1999, 2000, and 2001. We also find that petitioner's testimony that she was under duress is directly contradicted by her more contemporaneous testimony in the District Court. Furthermore, petitioner consulted with her criminal defense attorney prior to signing the Form 4549. See Martin, 274 F. Supp. at 1005-1006. In short, we find that petitioner's testimony regarding duress lacks credibility.

In Larson v. Commissioner, T.C. Memo. 1994-302, 1994 Tax Ct. Memo LEXIS 305, aff'd without published opinion, 60 F.3d 830 (8th Cir. 1995), the taxpayer entered into a plea agreement in which he pled guilty to criminal tax evasion under section 7201. Id. at \*9. The taxpayer argued that he was under duress when he pled guilty and that the plea agreement should not be used against him. Id. at \*35. The Court noted that the "criminal judgment, transcript, and related documents do not reflect duress and are regular on their face." Id. at \*35-\*36. As a result, the Court declined to find that the taxpayer was under duress when he agreed to plead guilty. Id. at \*36. Similarly, petitioner's plea hearing, sentencing hearing, and related documents reflect that she was not under duress and in fact voluntarily entered into the plea agreement because she benefited from

[*17] the plea agreement.[4]  Accordingly, we hold that petitioner was not under duress when she signed the Form 4549.  Consequently, petitioner may not dispute the amounts of the underlying liabilities reflected in the Form 4549.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

An appropriate order will be issued.

---

[4]In Larson v. Commissioner, T.C. Memo. 1994-302, 1994 Tax Ct. Memo LEXIS 305, at *36, aff'd without published opinion, 60 F.3d 830 (8th Cir. 1995), the Court also noted that "if * * * [the taxpayer] did not plead guilty of his own free will, that could constitute a fraud upon the U.S. District Court, a matter which * * * [the taxpayer] should attempt to remedy in that forum."  In the plea hearing petitioner was under oath when she confirmed to Judge Diamond that no one had made any threat or promise or assurance to her, other than the plea agreement, and that she was entering her guilty plea voluntarily.