E. RAY PRICE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Price v. Commissioner
Docket Nos. 1447-80, 1569-80.
United States Tax Court
T.C. Memo 1981-693; 1981 Tax Ct. Memo LEXIS 47; 43 T.C.M. (CCH) 18; T.C.M. (RIA) 81693; December 7, 1981. E. Ray Price, pro se. Michael L. Boman and James T. Million, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: In these consolidated cases respondent has determined deficiencies in petitioner's Federal income taxes as follows: Additions to tax
Year
Deficiency
(sec. 6651(a)) [1]
1970
$ 12,544.00
1971
22,929.00
1972
2,237.00
1973
11,594.34
$ 2,898.54
1975
148.54
37.14
1976
293.90
73.48
*48 At the call of this case for trial, on June 1, 1981, in Kansas City, Missouri, petitioner moved to sever certain procedural issues from the substantive issues presented. Petitioner's motion to sever was granted and, on June 4, 1981, trial was held on the procedural questions, to wit: (1) whether three consents to extend the period for assessment of tax for the taxable year 1973 until October 31, 1979, which are valid on their face, were executed by petitioner under duress and therefore void; and (2) whether statutory notices of deficiency were actually timely mailed by respondent to petitioner on October 30, 1979. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner resided in Chicago, Illinois, at the time the petitions herein were filed. He filed a Federal income tax return for 1973, dated December 3, 1974, which was received by the Internal Revenue Service Center at Austin, Texas, on December 9, 1974. Petitioner is, and has been for many years, engaged in the insurance business. *49 He has owned controlling interests in many insurance-related businesses and corporations. In the course of his business, petitioner has entered into many contracts. He is a graduate of the University of Oklahoma, where he majored in business administration. Several years ago he had practiced as a tax return preparer and over the years, in the course of his business affairs, he has had numerous dealings with the Internal Revenue Service (hereinafter IRS). In mid-1977, Thomas E. Dietz (hereinafter Dietz), [2] a revenue agent with the IRS since 1972, was assigned to audit Trans-World Managers Corporation, which was controlled by petitioner. During the course of that examination Dietz, upon his own initiative, requested petitioner to produce certain documents with regard to his individual income tax returns because of their relationship to certain items reported on the corporation's books. Petitioner told Dietz that he had the documents but that he would need more time to produce them. Dietz was willing to give petitioner more time but, due to his concern about the running of the statute of limitations, he asked petitioner to execute a consent to extend the limitations period. *50 Consequently, prior to the expiration of the limitations period for assessment of income tax due from the petitioner [3] for the taxable year 1973, the petitioner, on November 29, 1977, and the respondent, on November 30, 1977, timely executed an agreement in writing [4] extending said period for assessment of tax until June 30, 1978. A similar agreement was executed by both parties prior to June 30, 1978, extending the limitations period until October 31, 1978. A third and final extension of the statute of limitations on assessment, this time until October 31, 1979, was executed by the parties on August 18, 1978. In the course of his meetings with regard to the audits of his and Trans-World Managers Corporation's returns, and the subject extensions of the statute of limitations, petitioner dealt not only with Dietz but also with two of Dietz's supervisors. During 1979, respondent mailed from his Chicago office a statutory deficiency notice for the taxable years 1970, 1971, 1972, 1973, 1975 and 1976, to petitioner *51 at 407 South Dearborn Street, Room 925, Chicago, Illinois 60601. Respondent also mailed a duplicate original statutory notice for the same years to petitioner at 1443 George Washington Drive, Wichita, Kansas 67211. Petitioner received the statutory notice mailed to the Chicago address no later than November 7, 1979. The normal procedure for mailing statutory notices from the respondent's Chicago office is as follows: The 90-day clerk receives typed statutory notices, proofreads and date stamps them, and has them signed by the statutory notice coordinator. Statutory notices are mailed on the date stamped on the face thereof. Envelopes are then prepared for each notice by placing a certified mail stamp on the envelope and writing thereon a certified number. The 90-day clerk then marks each envelope with "E:R:C: 90-day" and, in pencil, indicates the years of deficiency. After the envelopes are prepared the 90-day clerk types out a certified mailing list (Post Office Form 3877) the certified numbers of the envelopes and the corresponding name, address, and years of deficiency. This list is then initialed by the 90-day clerk, date stamped to show when it was prepared and the letters *52 mailed, and double checked against the envelopes for correctness. After the statutory notices, envelopes, and certified list are prepared, the 90-day clerk takes them to the post office, where a postal clerk compares the envelopes to the certified mailing list then date stamps the list with the current date.[5] The 90-day clerk then checks to make sure that the postal stamp bears the current date, returns the stamped list to the IRS office and files it in a three-ring binder. Ms. Lettice Gipson is a 90-day clerk for the IRS in Chicago, Illinois, and she was so on October 30, 1979. On October 30, 1979, Ms. Gipson prepared two envelopes containing duplicate original statutory notices addressed as follows: Mr. E. Ray Price, 407 South Dearborn Street, Room 925, Chicago, Illinois 60601, [6] and Mr. E. Ray Price, 1443 George Washington Drive, Wichita, Kansas 67211. *53 The certified number appearing on the envelope containing the statutory notice received by petitioner (786691) was handwritten by Mr. Gipson, and corresponds to the number appearing beside petitioner's name and the Chicago address on the certified list. The certified list bears a United States Post Office stamp dated October 30, 1979. The envelope containing the statutory notice received by petitioner does not bear any postmark. The envelope containing the duplicate original statutory notice was sent to Wichita, Kansas (certified number 786692), and bears a postal stamp reflecting that it was not deliverable and that it was returned to the sender. The reverse of the envelope bears a Wichita postmark of November 3, 1979. It was received back at the IRS office in Chicago on November 6, 1979. OPINION Petitioner maintains that he executed the consents to extend the period of limitation for assessment for the taxable year 1973 under duress, rendering them null and void. Petitioner also contends that even if the consents are valid, the period of limitation on assessment expired on October 31, 1979, prior to the mailing of the statutory notice of deficiency. Section 6501(a) *54 of the Code provides that income tax shall be assessed within three years after the return was filed. Section 6501(c)(4) of the Code provides that the period of limitation will not expire until a date that the taxpayer and Secretary agree upon in writing if such agreement is made before the period is due to expire. When the taxpayer makes a prima facie case by alleging that assessment is barred by the statute of limitations and proving the filing date of the return, the Commissioner must go forward with countervailing proof to show that for some reason that period of limitations had not expired when he issued the statutory notice of deficiency. . [7]
The respondent's burden of going forward with the proof is discharged by introducing into evidence a consent, valid on its face, which extends the period of limitation for assessment beyond the date the statutory notice of deficiency was mailed. , affd. *55 .
The burden of proving that the consent is null and void by reason of its execution by petitioner under duress is upon petitioner. [8]
In the instant case the parties have stipulated the approximate date when petitioner filed his return for 1973, [9] and petitioner has asserted that assessment is barred by the statute of limitations. Thus, petitioner has met his prima facie case, forcing respondent to go forward with countervailing proof that the statutory notice of deficiency was timely issued. Respondent herein must prove both that there are consents extending the period for assessment and that the statutory notice was mailed prior to the expiration of the last consent. The parties have stipulated that they timely executed consents extending the statute of limitations on assessment until October 31, 1979. We must determine on what day respondent mailed *56 petitioner the notice of deficiency. Ms. Lettice Gipson, a 90-day clerk for the IRS, testified as to the normal procedures routinely followed in the mailing of statutory notices. The notice and its envelope are prepared and dated, a certified number is assigned and recorded on a certified list, the certified list is dated and initialed by the 90-day clerk, and all the documents are double checked for accuracy. The envelopes and certified list are then taken to the post office where a postal employee verifies that the envelopes containing statutory notices and the certified list correspond. He then date stamps the list which is kept and filed by the 90-day clerk. The date on the notice must always correspond to the date of mailing. Ms. Gipson testified, and we believe, that she followed precisely these procedures with regard to the notices sent to petitioner on October 30, 1979--one day prior to the expiration of period for assessment. Furthermore, the parties have stipulated that the statutory notice sent to petitioner was date stamped October 30, 1979. Also, respondent introduced the certified list bearing the United States Post Office "round stamp" from Chicago, Illinois, *57 containing that date. Finally, the certified letter sent to petitioner at the Wichita, Kansas, address with a successive certified number was postmarked "WichitaKansas, November 3, 1979" and "returned to sender," and it was received back at the IRS office in Chicago on November 6, 1979. We find this entirely consistent with an October 30, 1979 mailing date from Chicago, Illinois. On the basis of this evidence we find that respondent did mail the statutory notice to petitioner on October 30, 1979--prior to the expiration of the consent to extend the period of assessment. We are unpersuaded by petitioner's assertion that the certified list is unworthy of our consideration because United States Post Office internal procedures (not offered into evidence) allegedly require the postal clerk to sign the certified list upon receipt of the envelopes. We also note that, contrary to petitioner's assertions, it is not evidence of late mailing that the envelope did not have a dated postmark. Additionally, in his petition petitioner stated that he received the notice on November 7, 1979. Assuming that such was the date of delivery by the post office, we do not find it inconsistent with a *58 timely mailing. Moreover, the address in Chicago where he received the statutory notice, the same as that on his 1976 Federal income tax return, was the "Three Ring-a-Ding Answering Service." There is no evidence whatsoever to indicate whether November 7, 1979 is the date the answering service received the notice, or the date petitioner merely picked it up from them. Respondent having proved a timely mailing of the statutory notice of deficiency based on facially valid consents to extend the period for assessment, the onus is on petitioner to prove his contention that the consents were secured under duress. We have defined duress as actions by one party which deprive another of his freedom of will to do or not to do a specific act. . [10] Contracts executed under such circumstances are void. It is not duress on the part of respondent, however, to notify the taxpayer that he intends to use all lawful means to assess and collect the tax. ; . *59 Petitioner maintains that when he was initially asked to sign the consent in 1977 he refused. Dietz then allegedly "began to pressure and threaten" to do something that would cause petitioner great financial harm. Petitioner also asserts that Dietz threatened to seize his property, and to damage his business standing, reputation in the community and his credit rating, in a "taunting, harassing and vulgar? manner and cited as "threats by innuendo" the facial expressions and general demeanor of Dietz's supervisors. Mr. Dietz, as well as his two supervisors, testified herein and denied that they had made threatening statements of any kind. We are convinced that petitioner did not sign the consent under duress. First, petitioner is an educated person who has dealt with the IRS on numerous occasions. He has entered into numerous contracts in the course of his business dealings. We do not believe that he is the type of person who would be easily coerced. Second, it is the petitioner who asked Mr. Dietz for more time so that his business records could be made available, not the other way around.Third, on cross-examination, petitioner admitted that alleged threats to his credit *60 and reputation were merely "the manifestations or the effects of his [Dietz's] assessing or seizing assets"-- which further emphasizes the generalized nature of petitioner's testimony regarding purported threats. Finally, in the course of cross-examination, while respondent was exploring petitioner's educational and business background, petitioner objected to respondent's question, "Mr. Price, you consider yourself a businessman, don't you?," as being "taunting." Clearly that question in context was not taunting or harassing. Similarly, we do not believe that statements made to petitioner in connection with execution of the consents were threatening. It may be that Mr. Dietz told petitioner that his failure to execute a consent would necessitate the assessment of a proposed deficiency against him and that he would use all legal means to collect the tax. It may also be that petitioner would consider such a statement a threat to his business reputation and credit; however, it is an entirely reasonable statement by an IRS agent, and does not constitute a threat. . Consequently, respondent must prevail with regard to *61 each of the procedural issues presented herein. An appropriate order will be issued. Footnotes
1. Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Dietz is a law school graduate, a member of the bar of the State of Illinois, and he has passed the CPA examination.↩
3. Sec. 6501(a). ↩
4. Sec. 6501(c)(4).↩
5. Although generally not requested by the 90-day clerk, some postal employees will sign the certified list as additional acknowledgment of receipt of the certified letter.↩
6. Petitioner has stipulated that this address is that shown on his 1976 individual income tax return, and that he received the statutory notice mailed to this address.↩
7. ; .↩
8. See footnote 7, supra↩.
9. The exact date which petitioner filed his 1973 return is not crucial because the parties have stipulated that they signed the first consent to extend the period for assessment prior to expiration of the time prescribed by section 6501(a).↩
10. .↩