**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TWENTY-TWO STRATEGIC INVESTMENT FUNDS, *Petitioner*, and BIRCH VENTURES, LLC; TOM GONZALES, *Intervenors-Appellants*, v. UNITED STATES OF AMERICA, *Respondent-Appellee*. | No. 15-15551 D.C. No. 3:05-cv-02835-RS OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted May 18, 2017
San Francisco, California

Filed June 7, 2017

Before: Sidney R. Thomas, Chief Judge, Kim McLane Wardlaw, Circuit Judge, and Cathy Ann Bencivengo,[*] District Judge.

Opinion by Chief Judge Thomas

## SUMMARY[**]

### Tax

The panel affirmed the district court's judgment in an action raising a statute of limitations challenge to the Internal Revenue Service's determination of tax liabilities in a partnership level proceeding under the Tax Equity and Fiscal Responsibility Act.

In 2002, the IRS began investigating what it later determined to be a tax sheltering scheme and issued Final Partnership Administration Adjustments (FPAAs) to many of the limited liability companies (LLCs) that participated in that scheme. The adjustments effectively disallowed tax losses sustained through involvement in the scheme, and resulted in substantial tax liability for the LLCs. The tax matters partner for the funds that constituted the tax shelters challenged the disallowance of losses.

---

[*] The Honorable Cathy Ann Bencivengo, United States District Judge for the Southern District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Taxpayers, an individual investor (Tom Gonzales) and his single-member LLC (Birch Ventures), intervened in the action. The partnership tax return at issue was filed on April 16, 2001. Absent an extension on the statute of limitations, the IRS had until April 16, 2004, to assess taxes with respect to that return. Gonzales personally signed two consents to extend the limitations period, and the IRS issued a FPAA after the initial limitations period expired but within the extension granted by the consents.

The panel held that the statute of limitations extensions signed by Gonzales were valid. The panel reasoned that an alleged third-party conflict of interest, without more, does not vitiate the individual consent personally executed by a taxpayer and that, even crediting Gonzales's allegations in this case, the alleged actions by the IRS do not constitute legal duress warranting relief.

---

### COUNSEL

Mark Wray (argued), Law Offices of Mark Wray, Reno, Nevada, for Intervenors-Appellants.

Andrew M. Weiner (argued) and Thomas J. Clark, Attorneys; Tax Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

---

**OPINION**

THOMAS, Chief Judge:

We consider in this case whether consents to extend the statute of limitations for the assessment of tax attributable to a partnership item, signed by the taxpayer-partner, are invalid because of a third party's alleged conflict of interest or duress. Under the circumstances presented by this case, we conclude that they are not invalid, and we affirm the judgment of the district court.

I

This case arises out of an elaborate tax sheltering scheme that resulted in a massive Internal Revenue Service ("IRS") investigation, multiple criminal indictments and convictions, and a U.S. Senate investigation and hearing. The accounting firm KPMG developed and marketed an "investment product" called a "Bond Linked Issue Premium Structure," or "BLIPS." BLIPS was a means of investing in foreign currencies that were pegged to the U.S. dollar, but its ultimate purpose was to generate tax losses for investors who sought to offset substantial taxable gains in a given year. In 1997, several KPMG employees left the firm to form an investment advisory firm, Presidio Growth, LLC ("Presidio"). Presidio participated in the BLIPS investment strategy and offered this program to its clients.

In order to participate in the BLIPS program, a client would establish a single-member limited liability company ("LLC"), which would take out a specific loan with a participating lender and contribute all of the loan funds to a strategic investment fund, an LLC managed by Presidio,

which would then purchase foreign currency assets. After a brief period, usually about sixty days, the client would exit the BLIPS program, the assets would be sold, and the loan would be repaid with interest and pre-payment penalties. The result of this series of transactions was a tax loss for the client approximately equal to the amount of the offset he or she was seeking.

In 2002, the IRS launched an investigation into BLIPS investments promoted by KPMG, Presidio, and their principals. Ultimately, several KPMG partners were indicted for conspiracy and tax evasion. *See United States v. Stein*, 495 F. Supp. 2d 390 (S.D.N.Y. 2007). The IRS also began auditing personal tax returns from 1999 and 2000 that claimed BLIPS losses. When it became clear that BLIPS was a tax sheltering scheme and not a true investment vehicle, the IRS issued Final Partnership Administration Adjustments to many of the LLCs that participated in the BLIPS program. The adjustments effectively disallowed the tax losses sustained through BLIPS involvement and resulted in substantial tax liability for the single-member LLCs.

Presidio, as the tax matters partner for the strategic investment funds, brought the underlying action to challenge the IRS determination disallowing BLIPS-related losses on the partners' tax returns. The government moved for summary judgment, arguing that the BLIPS transactions lacked economic substance and should be excluded from affected tax returns. The district court concluded that the strategic investment funds constituted tax shelters, and granted summary judgment to the government.

An individual investor, Tom Gonzales, and his single-member LLC, Birch Ventures (collectively "Gonzales"),

intervened in the action. Gonzales participated in BLIPS by forming Birch Ventures LLC, which obtained a loan and invested the proceeds in the Logan Strategic Investment Fund ("Logan").[1]   Presidio was Logan's tax matters partner.[2] Logan filed its 2000 partnership tax return on April 16, 2001, so absent an extension of the statute of limitations, the IRS had until April 16, 2004, to assess any taxes with respect to that return. *See* 26 U.S.C. § 6229. Gonzales personally signed consents on December 2, 2003, and October 20, 2004, that together extended the limitations period to June 30, 2005. The IRS issued a Final Partnership Administration Adjustment to Presidio for Logan on April 28, 2005, after the initial limitations period expired but within the extension granted by the consents.

Separately from Presidio, Gonzales moved for summary judgment, arguing that the IRS failed to obtain valid extensions of the statute of limitations and that the Final Partnership Administration Adjustment issued to Logan was

---

[1] The tax code defines a partner as "a partner in the partnership" or "any other person whose income tax liability under subtitle A is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership." 26 U.S.C. § 6231(a)(2). Thus, both Gonzales and Birch Ventures are "partners" in Logan.

[2] A tax matters partner is the partner designated to act as a liaison between the partnership and the IRS in administrative proceedings, and as a representative of the partnership in judicial proceedings. 26 U.S.C. §§ 6229(b)(1)(B), 6231(a)(7). "The tax matters partner is the central figure of partnership proceedings. During both administrative proceedings and litigation, the tax matters partner serves as the focal point for service of all notices, documents and orders on the partnership." *Comput. Programs Lambda, Ltd. v. Comm'r*, 89 T.C. 198, 205 (1987).

therefore untimely. The district court granted summary judgment to the government, and Gonzales appealed.[3]

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's grant of a motion for summary judgment. *Candyce Martin 1999 Irrevocable Tr. v. United States*, 739 F.3d 1204, 1210 (9th Cir. 2014).

## II

The central issue in this case is the validity of the statute of limitation extensions signed by Gonzales, the taxpayer-partner.[4] Gonzales contends that the consents to extend the

---

[3] Gonzales challenged the IRS's Final Partnership Administration Adjustments before the district court. The district court concluded that the transactions at issue lacked economic substance and entered judgment for the United States. Gonzales does not appeal this determination.

[4] A partnership as an entity is not subject to federal income tax. 26 U.S.C. § 701. Rather, the partners of a partnership pay income tax attributable to the partnership on their individual tax returns. *Id.* In determining his income tax, each partner takes into account his share of the partnership's gains and losses. *Id.* § 702. Although partnerships do not file income tax returns, they are required to file a report of the partners' shares of gains and losses. *Id.* § 6031. If the IRS disagrees with something reported by the partnership, it opens an administrative proceeding and notifies each partner of the Final Partnership Administrative Adjustment that results from the proceeding. *Id.* § 6223(a). Partners then have an opportunity to seek judicial review of the adjustment. *Id.* § 6226. As a general rule, the IRS must assess federal income tax related to partnership items within three years of the date on which the partnership return was filed. *Id.* § 6229(a). However, a taxpayer-partner may agree to an extension or extensions of the limitations period. *Id.* § 6229(b)(1)(A). Such consents are routinely signed by taxpayers "in order to avoid immediate assessment by the IRS." *Phillips*

limitations period that he signed are invalid because his tax advisor had a conflict of interest and he signed the extensions under duress.

## A

Gonzales first argues that the consents to extend the limitations period that he personally signed are invalid because of the conflict of interest of his tax accountant and advisor, Steve Smith, because Smith was "instrumental in selling the [tax] shelter to Gonzales," received a commission for involving Gonzales in BLIPS, and signed the 2000 tax return that the IRS was auditing. According to Gonzales, the IRS was aware of these facts, but did not seek a waiver of the conflict.

Other than this vague implication of wrongdoing, Gonzales offers no evidence that Smith's involvement in promoting BLIPS and his involvement in preparing Gonzales's 2000 tax return combined to create a conflict of interest three years later when the IRS approached Gonzales himself about extending the limitations period. There is no evidence in the record that the IRS contacted Smith during the time he was advising Gonzales to request that Gonzales agree to extend his limitations period. Nor is there evidence that Smith ever provided any advice to Gonzales regarding extending his limitations period. Furthermore, as the district court observed, "[a]lthough Steve Smith represented Gonzales during the audit that flowed from his 2000 tax return, Gonzales had designated different representation before signing the consents. Gonzales offers no evidence that

v. Comm'r, 272 F.3d 1172, 1175 (9th Cir. 2001), as amended (Jan. 14, 2002).

his decision to consent to extend time was influenced by Steve Smith notwithstanding this latter designation." It was Gonzales's burden to point to evidence in the record showing a genuine dispute of fact on this point, Fed. R. Civ. P. 56(c)(1), and he has not done so.

Although he does not explain precisely how Smith's involvement with BLIPS and preparation of Gonzales's 2000 tax return taints the consents Gonzales personally signed three and four years later,  Gonzales cites two cases in support of his argument that such a situation presents a disabling conflict of interest, *Transpac Drilling Venture 1982-12 v. Comm'r*, 147 F.3d 221 (2d Cir. 1998), and *Phillips*. These cases are easily distinguishable.

In *Transpac*, the Second Circuit addressed a single question: "whether, as a result of being placed under criminal investigation by the IRS (and hence becoming subject to pressure by the IRS), the tax matters partners (TMPs) of various partnerships labored under a conflict of interest and thereby were disqualified from binding the partnerships." *Transpac*, 147 F.3d at 222. In contrast, we are concerned with whether the taxpayer may bind himself. Moreover, the conflict in *Transpac* was egregious and evident. The IRS in that case was conducting civil audits of Transpac partnerships at the same time it was conducting criminal investigations of some Transpac tax matters partners. *Id.* at 227. The IRS first sought extensions of the limitations period for issuing FPAAs from the individual partners, who declined to sign such extensions. *Id.* at 224. The IRS then sought consents from the tax matters partners, who were under criminal investigation and therefore had "a powerful incentive to ingratiate themselves to the government" and "ignore their fiduciary duties to the limited partners." *Id.* at 227. The case

involved an "unrefuted allegation that the Service also misled those limited partners who had inquired as to the status of the civil audits by telling them to consult their [tax matters partners] (who, in turn, had been expressly ordered not to disclose the existence of criminal proceedings against them)." *Id.* In these circumstances, the Second Circuit found that a "severe conflict cannot be doubted," and refused to allow the tax matters partners to bind the partnerships. *Id.*

Absent from the case at bar is any evidence that the government failed to obtain consent from Gonzales himself, that it sought consent from the tax matters partner after Gonzales expressly declined, or that it thwarted Gonzales's attempts to inform himself about the status of the audit by directing him to the tax matters partner, who was under criminal investigation but forbidden from revealing that fact. *Transpac* simply does not support Gonzales's argument that his tax advisor's role in promoting BLIPS in 2000 created a conflict sufficient to invalidate Gonzales's own consent to extend the limitations period in 2003 and again in 2004.

*Phillips* is similarly unhelpful for Gonzales. In *Phillips*, we were asked to decide "whether criminal tax investigation of a statutory [TMP] does, or must, end the TMP's power to act for a partnership." *Phillips*, 272 F.3d at 1173. Our answer was "no." *Id.* The individual partner in that case relied on *Transpac* in arguing that his tax matters partner had a disabling conflict of interest because the tax matters partner was under criminal investigation for his involvement in *other* partnerships. *Id.* at 1174–75. We cited *Transpac* with approval, noting that "[t]rust law, generally, invalidates the transaction of a trustee who is breaching his trust in a transaction in which the other party is aware of the breach. *Transpac* is a salutary application of this rule to the particular

case of a TMP who should have been seen by the IRS as laboring under an incapacitating conflict of interest." *Id*. at 1175 (citation omitted).    However, we found that two circumstances differentiated *Phillips* from *Transpac*.  First, in *Phillips*, "[t]he IRS made no attempt to get waivers from limited partners." *Id.*  Second, "[i]t is not intuitively obvious that [the tax matters partner] did what is a routine accommodation—signing a waiver in order to avoid immediate assessment by the IRS—in order to ingratiate himself in the investigation of his partnerships.  Phillips . . . speculated that [the tax matters partner] so acted; he [did] not prove[] it." *Id*.  Such is the case here.  In fact, the IRS obtained consents from Gonzales personally, and Gonzales has not pointed to any evidence proving that Smith was under criminal investigation at the time he was advising Gonzales, that Smith had a desire to ingratiate himself with the IRS, that such a desire tainted Gonzales's own consents to extend the limitations period, or that Smith had any involvement in Gonzales's decision to sign the consents.

In short, these cases do not stand for the proposition that a third party's alleged conflict of interest—especially absent evidence of government misconduct, or a breach of the third party's fiduciary duty to the taxpayer—invalidates a consent to an extension signed by the taxpayer himself.  As a result, the district court did not err in concluding that the consents Gonzales signed to extend the limitations period were not invalidated by Steve Smith's alleged conflict of interest.

B

Gonzales next argues that his consent to extend the limitations period was obtained under duress inflicted by IRS agent Paul Doerr.  Duress in the tax context is an "action[] by

one party which deprive[s] another of his freedom of will to do or not to do a specific act." *Price v. Comm'r*, 43 T.C.M. 18 (T.C. 1981), *aff'd*, 742 F.2d 1460 (7th Cir. 1984). The Tax Court also has held that "[i]f a taxpayer signs a waiver under duress or coercion, the waiver is invalid. However, where [the IRS] threatens to take legally authorized actions if a taxpayer does not sign a waiver, neither duress nor coercion exist, and the waiver is valid." *Shireman v. Comm'r*, T.C.M. (RIA) 2004-155 (T.C. 2004) (citation omitted).

Here, Gonzales first alleges that IRS agent Doerr met with Gonzales two times without legal representation present. The government disputes that any such meeting occurred. However, we are bound to construe the facts in the light most favorable to the non-movant in reviewing summary judgment orders. Construing the facts in the light most favorable to Gonzales and assuming the meeting did take place, the facts still do not justify an inference of duress. Gonzales can recall no details of the meeting other than its location. He cannot remember any questions agent Doerr asked him or any particular things agent Doerr said that were intimidating or coercive. His testimony was that he was worried that he might be in legal trouble and that the IRS could ruin his life. His conclusion was founded on inference. However, the fact that the agent declined to assure Gonzales that the IRS would not be pursuing lawful action against him does not justify an inference that Gonzales was deprived of his freedom of will to such a degree that he signed the consents to the extensions under duress. *Price*, 43 T.C.M. 18. Furthermore, the IRS was legally authorized to investigate and take action against Gonzales, so even if he feared legal trouble, he has not shown that this fear sufficed to support a finding of duress under *Shireman*.

Second, Gonzales contends that the fact that the agent served a summons on him constitutes duress. The parties agree that agent Doerr drove to Gonzales's home. Gonzales stated in his deposition that he was not home when agent Doerr visited his residence. Agent Doerr stated in his deposition that he drove to Gonzales's residence to serve a summons, and that he left the summons in the mailbox without encountering anyone. IRS agents are authorized by statute to issue summonses, and a summons regarding a tax return is required to be "delivered in hand to the person to whom it is directed, or left at his last and usual place of abode." 26 U.S.C. §§ 7602(a), 7603(a). There is simply no evidence that agent Doerr acted improperly or illegally in serving a summons at Gonzales's home, and there is no evidence to support Gonzales's assertion that his consent to extend the limitations period was obtained under duress.

There is nothing in the record indicating that Gonzales was deprived of his free will in executing the consents to an extension. Therefore, his duress argument fails.

## III

In sum, an alleged third-party conflict of interest, without more, does not vitiate the individual consent personally executed by the taxpayer. Even crediting Gonzales's allegations, the alleged actions by the IRS agent do not constitute legal duress warranting relief.

**AFFIRMED.**